JOINER, Senior District Judge.
In this case we are asked to review an order barring a trustee in bankruptcy under Chapter 7 from assuming and assigning a golf membership in a country club as an executory contract, pursuant to section 365 of the Bankruptcy Code. 11 U.S.C. § 365.
I.
The Dayton Country Club is an organization, in the form of a corporation, consisting of several hundred individuals who have joined together for recreation and entertainment. Its shares of stock may be held only by the members of the club and may not be accumulated in any substantial amount by one member.
The club offers social events, dining facilities, tennis courts, a swimming pool, and a golf course. It became apparent over a ■ period of time that each of these diverse programs could be enjoyed to full advantage by a different number of members. For example, since there was only one 18-hole golf course available, and because of the nature of the game, the maximum number of members eligible to play golf needed to be limited in order to make the playing of the game enjoyable to those playing. There was no need to so limit the number of members who could use the tennis courts, the pool, the restaurants, or who could enjoy the social events of the club. The club developed within its membership a special membership category for those who had full golfing privileges. This category was limited to 375 members. Detailed rules, procedures, and practices were developed to ensure the fair selection of golfing members. These rules, procedures, and practices define how this additional privilege is allocated, how the number of members is maintained at 375, how vacancies occur, how they are filled, and what additional fees are charged.
The record reflects that members of the club are entitled to play, eat, and socialize in all activities of the club except golf. If, in addition to these activities, a member desires to play golf, he or she asks to become a golfing member in one of several golf membership categories. When he or she makes this request, an additional substantial fee is paid to the club and the individual is placed on a waiting list. At the time the record was made in this case, there were about 70 persons on that list. When a vacancy occurs because of a failure to pay dues or a resignation, the first person on the waiting list is given the option to become a golfing member by paying an additional substantial fee. Upon becoming a golfing member, the monthly dues also increase substantially. If the person at the top of the waiting list declines the membership, then that person is placed at the bottom of the list and the next person on the list is given the opportunity to become a golfing member. There is no provision for *692 any person to assign or sell the golf membership to any other person or for any person to become a golfing member in any other way except in two intimate and personal situations dealt with in discrete ways. When the death of a golfing member occurs, a spouse (who had been enjoying the hospitality of the club) may take the deceased member’s place. If a divorce occurs, the member may designate his or her spouse as the golfing member. The club also has a program to encourage the younger generation of member families to become golfing members. Golfing members are permitted also to invite guests. Through its membership committee, the club makes the rules and establishes the procedures to describe whom among its larger membership list may be golfing members.
The nature of the golf membership within the overall club membership is the heart of this case. We are not dealing with the right to be a member of the club and there is nothing in this case relating to laws and social policies against discrimination. The issues in this case relate solely to the rights, duties, and privileges of the club and its members arising from the club’s effort to provide golfing privileges to some but not all of its members, and the effect of the bankruptcy laws upon that effort.
This matter involves appeals from separate orders entered in the bankruptcies of debtors Magness and Redman, both of whom were golfing members of the Dayton Country Club. The trustee in bankruptcy sought to assume and assign, through sale, the rights under these memberships to (1) members on the waiting list, (2) other club members, or (3) the general public, provided that the purchaser first obtains membership in the Dayton Country Club. In other words, the trustee seeks to increase the value of the bankruptcy estate by taking value for and assigning to others a relationship between the bankrupt and the club. The assignment would be to the detriment of other club members who had paid for and acquired the right to become golfing members in due course. The question is whether the trustee has the right to make the assignment.
The arrangement between the members of the club, including Magness and Red-man, and the Dayton Country Club, is a complex one involving rights, privileges, and duties, all of which are bound up in what is loosely called the contract for “full golf membership.” At the least, this contract involves (1) an executed portion, the achievement of “full golf membership,” and the payment of the nonrefundable fee the club charges for that membership in accordance with the rules, procedures, and practices prescribed by the club; (2) the rights of other club members to apply for golf membership as set out in the rules, procedures, and practices of the club; (3) the rights of those in the club who have applied for and have been accepted and have made substantial payments for full golf membership; (4) the obligation of the members to pay monthly dues; and (5) the obligation of the club to provide recreational facilities called for in its charter and bylaws. In other words, this contract between the debtors and the club and others is neither a simple contract to buy and sell a product or a service nor is it a lease.
Not only is it appropriate to cast these complex relationships in terms of both executed and executory contracts, it is not inappropriate to think of these contracts as creating a type of property interest. The full golf membership and the rights that come from that relationship with the club can be described as a property right of that member, the parameters of which are defined by the rules, procedures, and practices of the club. These rules, procedures, and practices, and therefore the extent of the members’ property interest, do not extend to any right on the members’ part to pass on the membership to others, except in the two situations described above (death or divorce). The persons on the waiting list also can be described as having a type of property interest in the relationships described in their contracts with the club. Theirs is a lesser interest than that of the full golfing members, but a real one nonetheless. They have paid the club for the right to be considered in the numbered order on the list to become full golfing *693 members as vacancies occur. They, like the full golfing members, have a status defined by the various rules, procedures, and practices pertaining to filling the membership roster.
The bankruptcy courts found, and the district court affirmed, that the full golf memberships are executory contracts under § 365 of the Bankruptcy Code. 11 U.S.C. § 365. Section 365(f)(1) of the Bankruptcy Code provides that executory contracts may be assigned notwithstanding non-assignment provisions in the contract or the law:
(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.
Section 365(c)(1) contains an exception to section 365(f)’s bar to enforcement of non-assignment provisions:
(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not' such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
(B) such party does not consent to such assumption or assignment ...
11 U.S.C. § 365(c)(1).
The bankruptcy courts found that the trustee was barred from assigning the full golf memberships by Ohio law under § 365(c). The courts concluded that the club’s rules were, in effect, anti-assignment provisions, and that Ohio law excused the club from accepting performance by others. The court thus gave effect to the provisions. Principal reliance was placed upon the cases of Lough v. Varsity Bowl, Inc., 16 Ohio St.2d 153, 243 N.E.2d 61 (1968), and State v. Judges of the Court of Common Pleas, 173 Ohio St. 239, 181 N.E.2d 261 (1962), which held that decisions resulting from voluntary associations’ dispute-resolution processes will not be revisited by the Ohio courts.
The trustee appealed these rulings to the district court. Prior to the decision of the district court on the assignability of the full golf memberships, the Dayton Country Club filed a motion to vacate the appeal of debtor Redman as moot, alleging that the club had cancelled the membership as the result of non-payment of dues. The trustee did not oppose this motion and the motion was granted on that ground.
The district court affirmed the order barring assignment of Magness’ full golf membership on the basis of the bankruptcy court’s reasoning, and observed as well that the case did not involve “the legal equivalent of a long-term commercial lease” but rather “a non-commercial dispute over the possession of a valuable membership in a recreational and social club.”
The trustee then appealed to this court, arguing that the district court erred in dismissing the Redman appeal as moot, and in affirming the order barring assignment of Magness’ full golf membership. We conclude that the decision of the district court was correct for two reasons. First, as the district court found, the trustee had no power under § 365 of the Code to assign this executory contract. Second, the relationships created by the various contracts between the club and its members create a type of property interest held by the parties to those contracts, the sale of which as proposed by the trustee adversely impacts on the property interests of others such that the sale is prohibited by § 363(e) of the Code. We now affirm.
II.
The argument of the trustee that the district court erred in dismissing the *694 Redman appeal as moot is based upon the propriety of the country club’s unilateral termination of Redman’s membership. The district court’s decision to grant the motion, however, was expressly based upon the fact that the country club’s motion was unopposed. The trustee did not request the district court to revisit that decision. Here, the trustee cites no justification for his failure to file a brief in opposition to the motion. We therefore have no basis upon which to conclude that it was error for the district court to grant the motion on the grounds stated. However, since the trustee’s power and authority to assign a full golf membership through sale is identically at issue in both appeals, our discussion below is equally dispositive of the trustee’s appeal relating to debtor Redman.
III.
The trustee asserts that what is involved is simply an executory contract between the bankrupt and the club permitting the bankrupt to play golf on the club course. As such, the trustee asserts that this exec-utory contract can be sold and assigned, and the estate of the bankrupt is entitled to the value that can be realized from such an assignment and sale.
The definition of “executory contract,” proposed by Professor Y. Countryman in Executory Contracts in Bankruptcy, Part I, 57 Minn. L.Rev. 439, 460, is “a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.” This definition was found by this court to be helpful but not controlling in the resolution of what is an executory contract. In re Jolly, 574 F.2d 349 (6th Cir.1978). Rather, this court suggested that in determining whether the contract is executory, we should work backward from an examination of the purposes to be accomplished by rejection and, if they have already been accomplished, then the contract cannot be said to be executory. In the instant case, because the trustee does not propose to reject the contract but wishes to assign it, it is not necessary to further explore the executory contract problem.
In examining the trustee’s right to assign through sale the full golf membership, we should make clear that we are not dealing with the right to assume the membership with all its baggage, thus permitting the debtor to play golf. What is involved here is the right of the trustee to sell and assign it to another person without consideration of the rights of others that encumber it. The court cannot envision a reason why the trustee would want to continue to pay dues and permit the debtor to enjoy the benefits of a full golf membership, but nothing in this case relates to that question. See discussion in James J. White, David G. Epstein & Steve H. Nickles, 1 Bankruptcy § 5-15 (forthcoming August 1992). It is the claimed right to sell and assign which we address.
Section 365(a) of the Bankruptcy Code specifically permits the trustee to assume an executory contract. Sections 365(f) and (c) also permit the assignment of such a contract, albeit with some limitations.
Several courts have addressed the scope of § 365(c), although the decisions are not persuasive. A seminal decision was In re Taylor Manufacturing, Inc., 6 B.R. 370, 372 (Bankr.N.D.Ga.1980). That court concluded, based upon language in the House Report accompanying an earlier draft of the bill, that § 365(c) was intended “to be applied narrowly and to such circumstances as contracts for the performance of nondel-egable duties.” This construction is merely a paraphrase and not particularly fruitful in application and § 365(c) applies by its terms to both assignment and delegation (although those terms are often used interchangeably in practice).
Apparently because of an example used by the Taylor court involving an opera singer’s contract, Taylor was often cited subsequently for the proposition that § 365(c) applied only to personal service contracts (a construction which, as the Taylor court noted, actually originated with Collier on Bankruptcy). Taylor was cited for this proposition in In re Braniff *695 Airways, Inc., 700 F.2d 935 (5th Cir.1983). The Court of Appeals for the Fifth Circuit had little trouble holding that the plain language of § 365(c) contains no such limitation and indicated that the section should receive an expansive reading.
The Court of Appeals for the First Circuit attempted to harmonize sections 365(f) and (c) in the case of In re Pioneer Ford Sales, Inc., 729 F.2d 27 (1st Cir.1984). That court also held that no personal service contract limitation appeared in the language of § 365(c). In attempting to reach a rational explanation of the interplay of sections 365(f) and (c), however, the court proceeded to read additional language into § 365(f):
As a matter of logic ... we see no conflict, for (c)(1)(A) refers to state laws that prohibit assignment “whether or not” the contract is silent, while (f)(1) contains no such limitation. Apparently (f)(1) includes state laws that prohibit assignment only when the contract is not silent about assignment; that is to say, state laws that enforce contract provisions prohibiting assignment.
Id. at 29 (emphasis in original). There is simply nothing in the language of § 365(f) which supports the limitation read into it by that court. In addition, it is at least equally as plausible that the phrase “whether or not such contract ... prohibits ... assignment” in § 365(c) was intended merely to emphasize that § 365(c) should not be construed to apply only to applicable law barring assignment, irrespective of the contract’s provisions (as opposed to applicable law enforcing anti-assignment provisions in certain contracts), a construction which might otherwise seem logical in light of § 365(f)’s explicit override of contractual anti-assignment provisions. Neither Pioneer Ford nor any other decision to date provides a defensible explication of the parameters of the § 365(c) exception. See discussion in James J. White, David G. Epstein & Steve H. Nickles, 1 Bankruptcy § 5-16 (forthcoming August 1992).
We must read sections 365(f) and (c) together. At first, it might seem that they are not consistent, but a careful parsing of the provisions suggests that § 365(f) contains the broad rule and § 365(c) contains a carefully crafted exception to the broad rule made necessary by general principles of the common law and our constitutions.
The parameters of subsections (f) and (c) are revealed through a straightforward reading of those subsections. Subsection (f) states that although the contract or applicable law prohibits assignment, these provisions do not diminish the broad power to assume and assign executory contracts granted the trustee by § 365(a). In other words, a general prohibition against the assignment of executory contracts, i.e., by contract or “applicable law,” is ineffective against the trustee. In this case the complex nature of the arrangements by the parties for filling vacancies in the full golf membership category is a clear statement that by virtue of these arrangements the parties may not assign these memberships. However, subsection (f), by specific reference to subsection (c), allows one specific circumstance in which the power of the trustee may be diminished. Subsection (c) states that if the attempted assignment by the trustee will impact upon the rights of a non-debtor third party, then any applicable law protecting the right of such party to refuse to accept from or render performance to an assignee will prohibit assignment by the trustee. While subsections (f) and (c) appear contradictory by referring to “applicable law” and commanding opposite results, a careful reading reveals that each subsection recognizes an “applicable law” of markedly different scope.[1]
Thus, in application to this case, § 365(f) permits the executory contract between the plaintiffs and the club regarding full golf membership to be assigned by the trustee even though the arrangements between the club and its members clearly do not permit them to assign such contracts, unless there is something in § 365(c) that *696 indicates to the contrary. Section 365(c) requires us to look at the rights and duties of the club as the other party to the contract and the “applicable law” regarding whether the club must accept performance from the assignee member chosen by the trustee or render performance to that member. As required in § 365(c), the applicable law of controlling significance to the solution of this problem addresses the interests of the non-debtor third parties, rather than law relating to general prohibitions or restrictions on assignment of exec-utory contracts covered by § 365(f).
This leads us to a careful examination of Ohio law in light of the nature of the contract. We must determine whether Ohio law excuses the club, as “a party other than the debtor,” from accepting as a full golfing member a person chosen by the trustee to be that member.
IV.
As stated earlier in this opinion, the contracts involve complex issues and multiple parties: the members of the club, in having an orderly procedure for the selection of full golfing members; the club itself, in demonstrating to all who would become members that there is a predictable and orderly method of filling vacancies in the golfing roster; and more particularly, persons on the waiting list who have deposited substantial sums of money based on an expectation and a developed procedure that in due course they, in turn, would become full golfing members.
If the trustee is permitted to assume and assign the full golf membership, the club would be required to breach its agreement with the persons on the waiting list, each of whom has contractual rights with- the club. It would require the club to accept performance from and render performance to a person other than the debtor. Section 365(c)(1)(A) is directly implicated if Ohio law excuses such performance.
Judge Weber is an experienced Ohio judge, having served 40 years as a lawyer and judge, serving on the Ohio Court of Common Pleas, the Ohio Court of Appeals, and the United States District Court. His opinion established that Ohio law is clear. Ohio law does not want the courts involved in the internal workings of associations when those associations have rationally developed rule and procedures. Lough v. Varsity Bowl, Inc., 16 Ohio St.2d 153, 243 N.E.2d 61 (1968); State v. Judges of the Court of Common Pleas, 173 Ohio St. 239, 181 N.E.2d 261 (1962). We find nothing to suggest that Judge Weber was in error in his conclusions about the nature of Ohio law on the subject.
The contracts creating the complex relationships among the parties and others are not in any way commercial. They create personal relationships among individuals who play golf, who are waiting to play golf, who eat together, swim and play together. They are personal contracts and Ohio law does not permit the assignment of personal contracts. Lucas v. Gross Motor Car Co., 32 Ohio App. 183, 161 N.E. 362, 363 (1927) (quoting Starchroom Publishing Co. v. Threlkeld Eng’g Co., 13 Ohio App. 281, 283 (1920)):
So-called personal contracts, or contracts in which the personality of one of the parties is material, are not assignable. Whether the personality of one or both parties is material depends on the intention of the parties, as shown by the language which they have used, and upon the nature of the contract.
The claim that the assignment will be made only to those who are already members of the club is not relevant. “Nor would the fact that a particular person it attempted to designate [assign] was personally unexceptionable affect the nature of the contract.” Starchroom, 13 Ohio App. at 282.
Therefore, we believe that the trustee’s motion to assign the full golf membership should be denied. We reach this conclusion because the arrangements for filling vacancies proscribe assignment, the club did not consent to the assignment and sale, and applicable law excuses the club from accepting performance from or rendering performance to a person other than the debtor.
*697 V.
A second reason exists for denial of the trustee’s motion to assume and assign these full golf memberships. Section 363(e) of the Code directs that “use, sale, or lease” of property by the trustee may be “prohibited[ed] or condition[ed]” in light of interests held by others in the subject property. In this instance, auctioning the full golf membership, although couched in terms of assignment, is a sale of a property interest and cannot be reconciled with the rights of persons on the waiting list, the club itself, or other members of the club.
The rights described in the rules, procedures, and practices of the Dayton Country Club and acquired by the debtor may be classified as property rights of the debtor. The trustee is authorized to sell property of the estate. 11 U.S.C. § 363(b)(1). However, the extent and nature of that property must stem from the rules, procedures, and practices at issue. The debtor had a property interest in the right to continue to play golf at the Dayton Country Club during the time he continued to pay the dues. This limited property right is much less than that to which the trustee lays claim, and is subject to other agreements and understandings among the parties and others who wanted to play golf at the club and who had placed their names on the waiting list.
When the debtors became golfing members of the club, the club’s rules, procedures, and practices divided the total bundle of rights that may have been given the debtors at that time. It gave the debtors the right to play golf as long as they paid their dues and, with the exception of death or divorce, gave to the persons on the waiting list the right to succeed, in the order on the waiting list, when the debtors ceased to perform their obligations to the club. This division of rights was an arrangement for the long-range benefit of the club and all of its members. It is a way to provide for the orderly, peaceful, and harmonious transfer of golfing privileges that does not depend on the economic status of individuals or even the degree of their influence. This peaceful, noncompetitive method of acquiring golfing members was an intimate part of the property rights possessed by the debtor, and of the relationship between all of the present golfing members and those on the waiting list. Had the club desired to maximize the value of the full golf memberships, it might have chosen a method somewhat like that proposed by the trustee to fill vacancies and profit by the additional amounts it received with each new membership, but it did not. It chose to give to each golfing member only a part of the total rights involved and to give to those on the waiting list the rest of those rights by providing that their turn would be honored, without competitive bidding, when there was a change in membership.
The trustee seeks to re-shape that for which the debtor bargained. When the debtor became a golfing member, he contracted for the right to play golf subject to the rights and privileges of those on the waiting list. The trustee wishes to assume and sell not the limited bundle of rights and duties purchased by the debtor but a much larger bundle of rights, including the rights of the persons on the waiting list— the right to be next in line — and without a redetermination of the economic value of each membership. If allowed, a new contract would be written, creating new and different property rights.
Section 363(e) of the Code directs that when property is to be sold by the trustee, notwithstanding other provisions of § 363, the court shall prohibit or make conditions necessary to protect other persons having an interest in the property to be sold. Since the trustee is attempting not only to sell the debtor’s right to play golf but also the rights of those on the waiting list to fill the next vacancy, the court was correct in denying the trustee’s motion. The interest of the persons presently involved in this orderly succession cannot adequately be protected in any manner except by prohibiting the sale and assignment of the membership.
In accordance with our conclusions set forth above, the denial of the trustee’s motion to assign the full golf membership, *698 and the dismissal of the Redman appeal as moot, are AFFIRMED.

. In his concurrence, Judge Guy has set forth a more detailed discussion of the scope of the applicable laws referenced in subsections (f) and (c). The discussion is a helpful amplification of our understanding of the distinct meanings of the phrase "applicable law."