### In re COMMONWEALTH MORTGAGE COMPANY, INC., Debtor.

**Bankruptcy No. 92–17073–WCH.**

United States Bankruptcy Court,
D. Massachusetts, E.D.

Dec. 3, 1992.

---

See also 145 B.R. 368.

Daniel Carragher, Day, Berry & Howard, Boston, MA, for Connecticut Housing Finance Ass'n.

J. Anthony Downs, Goodwin, Procter & Hoar, Boston, MA, for the Term Lenders.

Mark Berman, Hutchins & Wheeler, Boston, MA, for Creditor's Committee.

## DECISION ON MOTION FOR RELIEF FROM STAY OF CONNECTICUT HOUSING FINANCE AUTHORITY

WILLIAM C. HILLMAN, Bankruptcy Judge.

The Connecticut Housing Finance Authority ("CHFA") filed this motion for relief from stay pursuant to 11 U.S.C. § 362(d)(1)[1] in order to terminate one of two contracts between it and the Debtor ("CMC").

### FINDINGS OF FACT

On October 24, 1986, CHFA entered into two agreements with CMC. The first is a Master Commitment Agreement for Mortgage Purchases, not directly involved in this case. The second is a Home Mortgage Servicing Agreement (the "Servicing Agreement").[2] CHFA wishes to terminate the Servicing Agreement.

1. "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... (1) for cause, including the lack of adequate protection of an interest in property of such party in interest ..."

2. CHFA Ex. 2.

Under the terms of the Servicing Agreement, CMC services mortgages owned by CHFA, which activity includes maintaining records and reporting and accounting to CHFA, for which it receives an annual fee measured by the outstanding principal balances of the mortgages serviced.[3] CMC must comply with all applicable laws and regulations.[4] The Servicing Agreement includes a provision that "this agreement shall not be assigned, whether by operation of law or otherwise, by [CMC] or its successors or assigns without the written consent of CHFA."[5]

CHFA is permitted to terminate the servicing relationship as to any mortgage by transferring it, an action which does not require CMC's consent.[6] CHFA also has a right to terminate the Servicing Agreement entirely.[7] If the termination is without cause, CMC is entitled to a 1% termination fee.[8] "Cause," which would permit CHFA to terminate without paying a termination fee, is discussed later.

While the CMC–CHFA relationship continued, CMC entered into a credit arrangement with a group of banks[9] (the "Term Lenders").[10] By a security agreement dated September 30, 1991, CMC granted to the Term Lenders a security interest in all of CMC's servicing agreements, including specifically that with CHFA.

CMC filed its petition in this case on July 13, 1992. On the following day the Court held an emergency hearing and approved a stipulation pursuant to which the Term Lenders were authorized to take possession of and either hold or sell the pledged servicing agreements.[11]

As part of the process which followed, on July 31, 1992, the Term Lenders entered into an agreement with Farragut Mortgage Company ("Farragut") to provide interim servicing of the CHFA mortgages, among others.[12] Farragut also agreed to purchase CMC's interest in the various servicing agreements, subject to (in this case) CHFA's consent.[13]

Farragut requested the consent[14] but it was declined. Both a document introduced[15] and the testimony of CHFA's witness[16] demonstrate that it is CHFA's policy to resist assignments of servicing agreements with a view toward taking the servicing "in house" thus avoiding the payment of fees to outside servicers.[17]

The present motion seeks relief for cause under 11 U.S.C. § 362(d)(1) and specifies as grounds therefor that:

1. CMC is no longer servicing CHFA's loans.

2. CMC has abandoned its obligations under the Servicing Agreement.

3. The Term Lenders have no right to perform or delegate the performance of services under the Servicing Agreement.

## DISCUSSION AND CONCLUSIONS OF LAW

CHFA takes the position that an assignment has already taken place, since Farragut is currently servicing mortgages on behalf of the Term Lenders. However,

---

3. *Id.,* § 4A.

4. *Id.,* § 8.

5. *Id.,* § 15.

6. *Id.,* § 3M.

7. *Id.,* § 5.

8. *Id.,* § 5B(5).

9. The First National Bank of Chicago; Shawmut Bank, N.A.; First National Bank of Louisville; Sakura Bank; and Bank of America N.T. & S.A.

10. A more complete statement of the facts regarding the relationship between CMC and the Term Lenders appears in the findings and pleadings regarding the previously granted motion for relief from stay.

11. Bank Ex. 8.

12. CHFA Ex. 4.

13. Bank Ex. 7.

14. *Ibid.*

15. Bank Ex. 3.

16. Transcript, Hearing of October 27, 1992 ("Trans.") p. 32.

17. *Id.,* pp. 37, 38, 43.

The Court finds that the interim arrangement with Farragut does not amount to an assignment.

The motion seeks relief under § 362(d)(1). Considering the nature of the Servicing Agreement, "cause" under that section will be demonstrated if CMC is unable to assume and assign the Servicing Agreement, either because the Servicing Agreement is incapable of assignment by CMC or its successors, the Term Lenders, or because CMC has violated the contractual terms in a manner not subject to cure. If either of these situations are found to exist, the motion should be granted, as there is no value to the estate in retaining any interest in the Servicing Agreement. Any current income potential has already passed from the estate to the Term Lenders.

The initial inquiry must be whether the Servicing Agreement may be assumed and assigned. We find in 11 U.S.C. § 365(c) that the debtor in possession

> may not assume or assign an executory contract ... if—
>> (1)(A) applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession ...; and
>> (B) such party does not consent to such assumption or assignment....

■ The "applicable law" with which we are here concerned is applicable non-bankruptcy law. *In re Pioneer Ford Sales, Inc.,* 729 F.2d 27, 28 (1st Cir.1984). The purpose of the clause is to "prevent parties from using contractual language to prevent the trustee from assigning contracts that (when the contract is silent) contract law typically makes assignable." *Id.*

The state law applicable to the Servicing Agreement is agreed to be the law of Connecticut.[18]

■ CHFA would have us find the applicable law in the provisions of the Servicing Agreement and the enabling language of § III(A–2)(c) of CHFA's procedures which provides that CHFA may terminate the Servicing Agreement "in accordance with its terms."[19] The inquiry must be whether CHFA's regulatory requirements, and the contractual terms incorporated into them by reference, rise to the level of the "applicable law" respected in other cases.

In support of its position CHFA cites *Fidelity Guarantee Mortgage Corp. v. Connecticut Housing Finance Authority,* 532 F.Supp. 81 (D.Conn.1982). That case dealt with the constitutional validity of other provisions of § III(A–2) of CHFA's procedures. The court sustained the requirements and in so doing repeatedly described them as "economic regulations", "state laws regulatory of business or industrial conditions", etc. The decision does not contain an express statement that the CHFA regulations are state law, but it applies to the regulations the same language as is applicable to constitutional analysis of state statutes.

What the district court overlooked is that CHFA, while *of* the State of Connecticut, is not the state itself. It is created as "a public instrumentality and political subdivision" of the state, but the same statutory paragraph provides that CHFA "is not to be construed to be a department, institution or agency of the state."[20] The language at issue is not in a statute nor in a "force of law" regulation. The court finds that CHFA is sufficiently remote from the legislative or judicial power so that its administrative fiats and contractual terms do not constitute "applicable law" so as to invoke the exemption of § 365(c). The Servicing Agreement must be regarded as a contract between two private parties, one of whom is the subject of a petition for relief before this Court. It contains no provision making performance of the duties personal to CMC.[21]

**18.** CHFA Ex. 2, § 17.

**19.** CHFA Ex. 1, § III(A–2)(c).

**20.** Conn.Gen.Stat.Ann. § 8–244(a).

**21.** The apparently contrary view of the Sixth Circuit in *Rieser v. The Dayton Country Club Co. (In re Magness),* 972 F.2d 689 (6th Cir.1992) is inapplicable. It relates only to contractual relationships which "are not in any way commer-

The Servicing Agreement gives CHFA the right to terminate for cause in four instances:

(1) CMC fails to perform its obligations under the Servicing Agreement; or

(2) CMC assigns or attempts to assign the Servicing Agreement without CHFA's approval; or

(3) CMC shall initiate or suffer any proceedings of insolvency or reorganization under the Bankruptcy Act; or

(4) there is any change in CMC's financial status which, in CHFA's opinion, materially affects CMC's ability to provide satisfactory servicing of the CHFA mortgages.[22]

The estate's interest in the Servicing Agreement is not affected by conditions (2), (3) or (4). The provisions of 11 U.S.C. §§ 365(b)(2) and 541(c)(1)(B)[23] override them.

■ As to condition (1), CHFA claims that CMC is in breach because it is not itself performing the services. The Court has not been directed to, nor has it found, any provision supporting CHFA's argument that the use of an outside agency by CMC to provide necessary services under the Servicing Agreement violates that agreement. Utilization of such services does not constitute a breach.[24]

The only other claim that the services are not being properly performed post-petition, albeit by Farragut, is the testimony of CHFA's Loan Portfolio Manager that "there have been some problems in being unable to find mortgage files, and not returning telephone calls to counsel on foreclosure matters" which impacts the ability to process and complete foreclosure matters, convey property to the insurer/guarantor."[25] There was no amplification and no demonstration of a single instance where either of the two problems mentioned have resulted in a failure to perform under the Servicing Agreement. Indeed, the testimony was that the refusal to transfer was not related to the stated problems.[26] The evidence demonstrated that there was no problem with CMC's servicing pre-petition[27] and hence no pre-petition default.

Accordingly the Court concludes that CHFA possesses no right valid in bankruptcy to terminate the Servicing Agreement for cause.

■ As previously noted, CHFA does retain an absolute right to terminate the Servicing Agreement without cause by paying a 1% termination fee.[28] This provision is valid and enforceable in bankruptcy

---

cial." *Id.* at 696. The present case is "nothing more than a strict business transaction to furnish economic gains to both contracting parties." *In re Sunrise Restaurants, Inc.,* 135 B.R. 149, 153 (Bankr.M.D.Fla.1991).

**22.** CHFA Ex. 2, § 5B(1)–(4).

**23.** "(b)(1) If there has been a default in an executory contract ... of the debtor, the trustee may not assume such contract ... unless....

"(2) Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to—

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; or...."

11 U.S.C. § 365(b)(1), (2).

"(c)(1) ... [A]n interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest of the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor ... and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property."

11 U.S.C. § 541(c)(1)(B).

**24.** Because the Court finds that there has been no default under the Servicing Agreement, the cure and adequate assurance provisions of § 365(b) are inapplicable.

**25.** Trans. p. 24.

**26.** Trans. p. 39.

**27.** Trans. p. 33.

**28.** "CHFA shall have the right to terminate this Agreement ... without cause, upon thirty (30) days' written notice to Servicer and the payment of a termination fee to Servicer of one percent (1%) of the aggregate unpaid principal amounts of all Mortgages subject hereto at the time of such termination." CHFA Ex. 2, § 5B(5).

against CMC and those claiming under it. The motion for relief from stay will be granted to the extent of allowing CHFA to cancel the Servicing Agreement, if it so desires, upon payment of the fee provided. So that the estate and the Term Lenders will be spared suspense, CHFA shall exercise its right to cancel, if it chooses to do so, not later than one calendar month from the date of the order issued pursuant to this decision.

If CHFA does not exercise its right to cancel, CMC may assume and transfer its rights under the Servicing Agreement consistent with 11 U.S.C. § 365(f). If the parties are unable to agree upon the terms of adequate assurance of future performance by the assignee as required by § 365(f)(2)(B), any party in interest may apply to the Court for a hearing at which that determination will be made.

An appropriate order will enter.