**In re CATAPULT ENTERTAINMENT, INC., a California corporation, aka Storm Systems, Debtor.**

**Stephen Perlman, Appellant,**

**v.**

**Catapult Entertainment, Inc., a California corporation, aka Storm Systems, Appellee.**

**No. 97–16707.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1998.

Decided Jan. 28, 1999.

Randy Michelson, McCutchen, Doyle, Brown & Enersen, San Francisco, California, for the appellant.

John Walshe Murray, Murray & Murray, Palo Alto, California, for the appellee.

* Honorable Robert J. Bryan, United States District Judge for the Western District of Washington, sitting by designation.

Before: FLETCHER and TASHIMA, Circuit Judges, and BRYAN,* District Judge.

FLETCHER, Circuit Judge:

Appellant Stephen Perlman ("Perlman") licensed certain patents to appellee Catapult Entertainment, Inc. ("Catapult"). He now seeks to bar Catapult, which has since become a Chapter 11 debtor in possession, from assuming the patent licenses as part of its reorganization plan. Notwithstanding Perlman's objections, the bankruptcy court approved the assumption of the licenses and confirmed the reorganization plan. The district court affirmed the bankruptcy court on intermediate appeal. Perlman appeals that decision. We are called upon to determine whether, in light of § 365(c)(1) of the Bankruptcy Code, a Chapter 11 debtor in possession may assume certain nonexclusive patent licenses over a licensor's objection. We conclude that the bankruptcy court erred in permitting the debtor in possession to assume the patent licenses in question.

I.

Catapult, a California corporation, was formed in 1994 to create an online gaming network for 16–bit console videogames. That same year, Catapult entered into two license agreements with Perlman, wherein Perlman granted to Catapult the right to exploit certain relevant technologies, including patents and patent applications.

In October 1996, Catapult filed for reorganization under Chapter 11 of the Bankruptcy Code. Shortly before the filing of the bankruptcy petition, Catapult entered into a merger agreement with Mpath Interactive, Inc. ("Mpath"). This agreement contemplated the filing of the bankruptcy petition, fol-

lowed by a reorganization via a "reverse triangular merger" involving Mpath, MPCAT Acquisition Corporation ("MPCAT"), and Catapult. Under the terms of the merger agreement, MPCAT (a wholly-owned subsidiary of Mpath created for this transaction) would merge into Catapult, leaving Catapult as the surviving entity. When the dust cleared, Catapult's creditors and equity holders would have received approximately $14 million in cash, notes, and securities; Catapult, in turn, would have become a wholly-owned subsidiary of Mpath. The relevant third party creditors and equity holders accepted Catapult's reorganization plan by the majorities required by the Bankruptcy Code.

On October 24, 1996, as part of the reorganization plan, Catapult filed a motion with the bankruptcy court seeking to assume some 140 executory contracts and leases, including the Perlman licenses. Over Perlman's objection, the bankruptcy court granted Catapult's motion and approved the reorganization plan. The district court subsequently affirmed the bankruptcy court. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 158(d) and, because the relevant facts are undisputed, review the orders below *de novo. See Everex Sys. v. Cadtrak Corp. (In re CFLC, Inc.),* 89 F.3d 673, 675 (9th Cir.1996).

## II.

Section 365 of the Bankruptcy Code gives a trustee in bankruptcy (or, in a Chapter 11 case, the debtor in possession) the authority to assume, assign, or reject the executory contracts and unexpired leases of the debtor, notwithstanding any contrary provisions appearing in such contracts or leases. *See* 11 U.S.C. § 365(a) & (f). This extraordinary authority, however, is not absolute. Section 365(c)(1) provides that, notwithstanding the general policy set out in § 365(a):

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment. . . .

11 U.S.C. § 365(c). Our task, simply put, is to apply this statutory language to the facts at hand and determine whether it prohibits Catapult, as the debtor in possession, from assuming the Perlman licenses without Perlman's consent.[1]

■ While simply put, our task is not so easily resolved; the proper interpretation of § 365(c)(1) has been the subject of considerable disagreement among courts and commentators. On one side are those who adhere to the plain statutory language, which establishes a so-called "hypothetical test" to govern the assumption of executory contracts. *See In re James Cable Partners,* 27 F.3d 534, 537 (11th Cir.1994) (characterizing § 365(c)(1)(A) as posing "a hypothetical question"); *In re West Elec., Inc.,* 852 F.2d 79, 83 (3d Cir.1988) (same); *In re Catron,* 158 B.R. 629, 633–38 (E.D.Va.1993) (same), *aff'd without op.,* 25 F.3d 1038 (4th Cir.1994). On the other side are those that forsake the statutory language in favor of an "actual test" that, in their view, better accomplishes the intent of Congress. *See Institut Pasteur v. Cambridge Biotech Corp.,* 104 F.3d 489, 493 (1st Cir.) (rejecting the hypothetical test in favor of the actual test), *cert. denied,* —— U.S. ——, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997).[2] Although we have on two occasions

---

1. Perlman also contends that, even if Catapult were entitled to *assume* the Perlman licenses, § 365(c)(1) also prohibits the *assignment* of the Perlman licenses to Mpath, accomplished by Catapult here through the contemplated Catapult–MPCAT–Mpath reverse triangular merger. Because we conclude that § 365(c)(1) bars Catapult from assuming the Perlman licenses, we express

no opinion regarding whether the merger transaction contemplated by Catapult would have resulted in a prohibited "assignment" within the meaning of § 365(c)(1).

2. The weight of lower court authority appears to favor the "actual test." *See, e.g., Texaco Inc. v. Louisiana Land and Expl. Co.,* 136 B.R. 658,

declined to choose between these competing visions, *see Worthington v. General Motors Corp. (In re Claremont Acquisition Corp.),* 113 F.3d 1029, 1032 (9th Cir.1997); *Everex,* 89 F.3d at 676–77, today we hold that we are bound by the plain terms of the statute and join the Third and Eleventh Circuits in adopting the "hypothetical test."

### III.

We begin, as we must, with the statutory language. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (noting that the statutory language is the "cardinal canon" to be addressed "before all others"); *Jeffries v. Wood,* 114 F.3d 1484, 1495 (9th Cir.) (en banc) ("In statutory interpretation, the starting point is always the language of the statute itself."), *cert. denied,* — U.S. —, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). The plain language of § 365(c)(1) "link[s] nonassignability under 'applicable law' together with a prohibition on assumption in bankruptcy." 1 DAVID G. EPSTEIN, STEVE H. NICKLES & JAMES J. WHITE, BANKRUPTCY § 5–15 at 474 (1992). In other words, the statute by its terms bars a debtor in possession from *assuming* an executory contract without the nondebtor's consent where applicable law precludes *assignment* of the contract to a third party. The literal language of § 365(c)(1) is thus said to establish a "hypothetical test": a debtor in possession may not assume an executory contract over the nondebtor's objection if applicable law would bar assignment to a hypothetical third party, even where the debtor in possession has no intention of assigning the contract in question to any such third party. *See In re James Cable,* 27 F.3d at 537 (characterizing

§ 365(c)(1)(A) as presenting "a hypothetical question"); *In re West Elecs.,* ·852 F.2d at 83 (same).

■■■ Before applying the statutory language to the case at hand, we first resolve a number of preliminary issues that are either not disputed by the parties, or are so clearly established as to deserve no more than passing reference. First, we follow the lead of the parties in assuming that the Perlman licenses are executory agreements within the meaning of § 365. Second, it is well-established that § 365(c)'s use of the term "trustee" includes Chapter 11 debtors in possession. *See Institut Pasteur,* 104 F.3d at 492 n. 7; *In re James Cable Partners,* 27 F.3d at 537; *In re West Elecs.,* 852 F.2d at 82. Third, our precedents make it clear that federal patent law constitutes "applicable law" within the meaning of § 365(c), and that nonexclusive [3] patent licenses are "personal and assignable only with the consent of the licensor." *Everex,* 89 F.3d at 680.

■■■ When we have cleared away these preliminary matters, application of the statute to the facts of this case becomes relatively straightforward:

(c) *Catapult* may not assume ... *the Perlman licenses,* ... if

(1)(A) *federal patent law* excuses *Perlman* from accepting performance from or rendering performance to an entity other than *Catapult*...; and

(B) *Perlman* does not consent to such assumption....

11 U.S.C. § 365(c) (substitutions in italics). Since federal patent law makes nonexclusive patent licenses personal and nondelegable, § 365(c)(1)(A) is satisfied. Perlman has

668–71 (M.D.La.1992); *In re GP Express Airlines, Inc.,* 200 B.R. 222, 231–33 (Bankr.D.Neb.1996); *In re Am. Ship Bldg. Co.,* 164 B.R. 358, 362–63 (Bankr.M.D.Fla.1994); *In re Fastrax,* 129 B.R. 274, 277 (Bankr.M.D.Fla.1991); *In re Hartec Enters., Inc.,* 117 B.R. 865, 871–73 (Bankr.W.D.Tex. 1990), *vacated on other grounds,* 130 B.R. 929 (W.D.Tex.1991); *In re Cardinal Indus., Inc.,* 116 B.R. 964, 976–82 (Bankr.S.D.Ohio 1990) (rejecting hypothetical test in connection with similar statutory language of § 365(e)(2)(A)).

**3.** One of the two Perlman licenses began its life as an exclusive license. Perlman in a sworn

declaration stated that, pursuant to its terms, the license has since become nonexclusive. Because Catapult has not offered any rebuttal evidence, and because neither party raised the issue in connection with the issues raised in this appeal, we will assume that the Perlman licenses are nonexclusive. Accordingly, we express no opinion regarding the assignability of *exclusive* patent licenses under federal law, and note that we expressed no opinion on this subject in *Everex.* *See Everex,* 89 F.3d at 679 ("Federal law holds a *nonexclusive* patent license to be personal and nonassignable ....") (emphasis added).

withheld his consent, thus satisfying § 365(c)(1)(B). Accordingly, the plain language of § 365(c)(1) bars Catapult from assuming the Perlman licenses.

### IV.

Catapult urges us to abandon the literal language of § 365(c)(1) in favor of an alternative approach, reasoning that Congress did not intend to bar debtors in possession from assuming their own contracts where no assignment is contemplated. In Catapult's view, § 365(c)(1) should be interpreted as embodying an "actual test": the statute bars assumption by the debtor in possession only where the reorganization in question results in the nondebtor *actually* having to accept performance from a third party. Under this reading of § 365(c), the debtor in possession would be permitted to assume any executory contract, so long as no assignment was contemplated. Put another way, Catapult suggests that, as to a debtor in possession, § 365(c)(1) should be read to prohibit assumption *and* assignment, rather than assumption *or* assignment.

Catapult has marshalled considerable authority to support this reading. The arguments supporting Catapult's position can be divided into three categories: (1) the literal reading creates inconsistencies within § 365; (2) the literal reading is incompatible with the legislative history; and (3) the literal reading flies in the face of sound bankruptcy policy. Nonetheless, we find that none of these considerations justifies departing from the plain language of § 365(c)(1).

### A.

█ Catapult first argues that a literal reading of § 365(c)(1) sets the statute at war with itself and its neighboring provisions. Deviation from the plain language, contends Catapult, is necessary if internal consistency is to be achieved. We agree with Catapult that a court should interpret a statute, if possible, so as to minimize discord among related provisions. *See* 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.06 (5th ed. 1992) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error."). However, the dire inconsistencies cited by Catapult turn out, on closer analysis, to be no such thing.

Catapult, for example, singles out the interaction between § 365(c)(1) and § 365(f)(1) as a statutory trouble spot. *See In re Catron,* 158 B.R. at 636 (exploring apparent conflict between subsections (c)(1) and (f)(1)); *In re Cardinal Indus.,* 116 B.R. at 976–77 (same). Subsection (f)(1) provides that executory contracts, once assumed, may be assigned notwithstanding any contrary provisions contained in the contract *or applicable law:*

> (f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, *or in applicable law,* that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection....

11 U.S.C. § 365(f)(1) (emphasis added).

The potential conflict between subsections (c)(1) and (f)(1) arises from their respective treatments of "applicable law." The plain language of subsection (c)(1) bars assumption (absent consent) whenever "applicable law" would bar assignment. Subsection (f)(1) states that, *contrary provisions in applicable law notwithstanding,* executory contracts may be assigned. Since assumption is a necessary prerequisite to assignment under § 365, *see* 11 U.S.C. § 365(f)(2)(A), a literal reading of subsection (c)(1) appears to render subsection (f)(1) superfluous. In the words of the Sixth Circuit, "[S]ection 365(c), the recognized exception to 365(f), appears at first to resuscitate in full the very anti-assignment 'applicable law' which 365(f) nullifies." *In re Magness,* 972 F.2d 689, 695 (6th Cir.1992) (Guy, J., concurring). Faced with this dilemma, one district court reluctantly concluded that the "[c]onflict between subsections (c) and (f) of § 365 is inescapable." *See In re Catron,* 158 B.R. at 636.

Subsequent authority, however, suggests that this conclusion may have been unduly pessimistic. The Sixth Circuit has credibly reconciled the warring provisions by noting that "each subsection recognizes an 'applicable law' of markedly different scope." *In re Magness,* 972 F.2d at 695; *accord In re James Cable,* 27 F.3d at 537–38; *In re Lil' Things, Inc.,* 220 B.R. 583, 590–91 (Bankr. N.D.Tex.1998); *In re Antonelli,* 148 B.R. 443, 448 (D.Md.1992), *aff'd without op.,* 4 F.3d 984 (4th Cir.1993). Subsection (f)(1) states the broad rule—a law that, as a general matter, "prohibits, restricts, or conditions the assignment" of executory contracts is trumped by the provisions of subsection (f)(1). *See In re James Cable,* 27 F.3d at 538; *Magness,* 972 F.2d at 695. Subsection (c)(1), however, states a carefully crafted exception to the broad rule—where applicable law does not merely recite a general ban on assignment, but instead more specifically "excuses a party . . . from accepting performance from or rendering performance to an entity" different from the one with which the party originally contracted, the applicable law prevails over subsection (f)(1). *See id.* In other words, in determining whether an "applicable law" stands or falls under § 365(f)(1), a court must ask *why* the "applicable law" prohibits assignment. *See In re Magness,* 972 F.2d at 700 (J. Guy, concurring); *In re Antonelli,* 148 B.R. at 448. Only if the law prohibits assignment on the rationale that the identity of the contracting party is material to the agreement will subsection (c)(1) rescue it.[4] *See id.* We agree with the Sixth and Eleventh Circuits that a literal reading of subsection (c)(1) does not inevitably set it at odds with subsection (f)(1).

Catapult next focuses on the internal structure of § 365(c)(1) itself. According to Catapult, the literal approach to subsection (c)(1) renders the phrase "or the debtor in possession" contained in § 365(c)(1)(A) superfluous.[5] In the words of one bankruptcy court, "[i]f the directive of Section 365(c)(1) is to prohibit assumption whenever applicable law excuses performance relative to any entity other than the debtor, why add the words 'or debtor in possession?' The [hypothetical] test renders this phrase surplusage." *In re Hartec,* 117 B.R. at 871–72; *accord In re Fastrax, Inc.,* 129 B.R. at 277; *In re Cardinal Indus.,* 116 B.R. at 979.

A close reading of § 365(c)(1), however, dispels this notion. By its terms, subsection (c)(1) addresses two conceptually distinct events: assumption and assignment. The plain language of the provision makes it clear that each of these events is contingent on the nondebtor's separate consent. Consequently, where a nondebtor consents to the *assumption* of an executory contract, subsection (c)(1) will have to be applied a second time if the debtor in possession wishes to *assign* the contract in question. On that second application, the relevant question would be whether "applicable law excuses a party from accepting performance from or rendering performance to an entity other than . . . *the debtor in possession.*" 11 U.S.C. § 365(c)(1)(A) (emphasis added). Consequently, the phrase "debtor in possession," far from being rendered superfluous by a literal reading of subsection (c)(1), dovetails neatly with the disjunctive language that opens subsection (c)(1): "The trustee may not assume *or* assign . . . ." 11 U.S.C. § 365(c) (emphasis added); *cf. In re Catron,* 158 B.R. at 636 (rejecting argument that literal reading of § 365(c) makes "or assign" superfluous insofar as assumption is a prerequisite to assignment).

---

4. We note that, in the instant case, the federal law principle against the assignability of nonexclusive patent licenses is rooted in the personal nature of a nonexclusive license—the identity of a licensee may matter a great deal to a licensor. *See In re CFLC,* 89 F.3d at 679 (explaining rationale behind federal law rule against assignability).

5. The phrase in question was added by Congress in 1984, replacing an earlier formulation focusing on the "trustee or an assignee":

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the trustee or an assignee of such contract or lease *the debtor or the debtor in possession,* whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties.

11 U.S.C. § 365(c)(1)(A) (prior language stricken through).

A third potential inconsistency identified by Catapult relates to § 365(c)(2). According to Catapult, a literal reading of subsection (c)(1) renders subsection (c)(2) a dead letter. *See In re Cardinal Indus.,* 116 B.R. at 980 (explicating this argument). Subsection (c)(2) provides:

> (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if
>
> > (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor....

11 U.S.C. § 365(c)(2). According to Catapult, the contracts encompassed by subsection (c)(2) are all nonassignable as a matter of applicable state law. As a result, a literal reading of subsection (c)(1) would seem to snare and dispose of every executory contract within subsection (c)(2)'s scope. Perlman, however, persuasively rebuts this argument, noting that even if the state law governing the assignability of loan agreements and financing contracts is relatively uniform today, Congress by enacting subsection (c)(2) cemented nationwide uniformity in the bankruptcy context, effectively ensuring creditors that these particular contracts would not be assumable in bankruptcy. Put another way, it is the national uniformity of applicable state law that has rendered subsection (c)(2) superfluous, not the terms of subsection (c)(1).

In any event, subsection (c)(1) does not completely swallow up subsection (c)(2). Subsection (c)(1) by its terms permits assumption and assignment of executory loan agreements *so long as the nondebtor consents. See* 11 U.S.C. § 365(c)(1)(B). Subsection (c)(2), in contrast, bans assumption and assignment of such agreements, *consent of the nondebtor notwithstanding. See Transamerica Commercial Fin. Corp. v. Citibank, N.A. (In re Sun Runner Marine, Inc.),* 945

F.2d 1089, 1093 (9th Cir.1991) ("Section 365(c)(2) unambiguously prohibits the assumption of financial accommodation contracts, regardless of the consent of the nondebtor party."); 2 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE 2D § 39:19 ("[T]he correct view is that executory credit contracts may not be assumed in bankruptcy regardless of the desires of the parties."). Accordingly, contrary to Catapult's assertion, subsection (c)(1) does not necessarily catch upriver all the fish that would otherwise be netted by subsection (c)(2). Once again, the "inconsistency" identified by Catapult proves evanescent under close scrutiny. We see no reason why these two provisions cannot happily coexist.[6]

We conclude that the claimed inconsistencies are not actual and that the plain language of § 365(c)(1) compels the result Perlman urges: Catapult may not assume the Perlman licenses over Perlman's objection. Catapult has not demonstrated that, in according the words of subsection (c)(1) their plain meaning, we do violence to subsection (c)(1) or the provisions that accompany it.

### B.

■ Catapult next urges that legislative history requires disregard of the plain language of § 365(c)(1). First off, because we discern no ambiguity in the plain statutory language, we need not resort to legislative history. *See Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 808–09 n. 3, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute."); *Gumport v. Sterling Press (In re Transcon Lines),* 58 F.3d 1432, 1437 (9th Cir.1995); *Brooker v. Desert Hosp. Corp.,* 947 F.2d 412, 414 (9th Cir.1991).

■ We will depart from this rule, if at all, only where the legislative history clearly indicates that Congress meant something other than what it said. *See City of Auburn v. United States,* 154 F.3d 1025, 1029 (9th Cir. 1998); *California v. Montrose Chem. Corp.,* 104 F.3d 1507, 1515 (9th Cir.1997). Here,

---

6. Catapult also advances what it claims is a fourth inconsistency by contrasting the plain language of § 365(c)(1) with the provisions of § 365(e)(1), which nullifies "ipso facto" clauses.

In rejecting this contention, it is enough to note that § 365(e)(2)(A) expressly revives "ipso facto" clauses in precisely the same executory contracts that fall within the scope of § 365(c)(1).

the legislative history unearthed by Catapult falls far short of this mark. The legislative history behind § 365(c) was exhaustively analyzed by the bankruptcy court in *In re Cardinal Industries*, 116 B.R. at 978-80. Its discussion makes it clear that there exists no contemporaneous legislative history regarding the current formulation of subsection (c)(1). *Id.* at 978 ("[T]here is no authoritative legislative history for BAFJA as enacted in 1984."). Catapult, however, argues that the language as ultimately enacted in 1984 had its genesis in a 1980 House amendment to an earlier Senate technical corrections bill. The amendment was accompanied by "a relatively obscure committee report." 1 DAVID G. EPSTEIN, STEVE H. NICKLES & JAMES J. WHITE, BANKRUPTCY § 5-15 (1992). In explaining the amendment, the report stated:

> This amendment makes it clear that the prohibition against a trustee's power to assume an executory contract does not apply where it is the debtor that is in possession and the performance to be given or received under a personal service contract will be the same as if no petition had been filed because of the personal service nature of the contract.

*In re Cardinal Indus.*, 116 B.R. at 979 (quoting H.R.Rep. No. 1195, 96th Cong., 2d Sess. § 27(b) (1980)).[7] However, since the report relates to a different proposed bill, predates enactment of § 365(c)(1) by several years, and expresses at most the thoughts of only one committee in the House, we are not inclined to view it as the sort of clear indication of contrary intent that would overcome the unambiguous language of subsection (c)(1).[8]

### C.

Catapult makes the appealing argument that, as a leading bankruptcy commentator has pointed out, there are policy reasons to prefer the "actual test." *See* 3 LAWRENCE P. KING, COLLIER ON BANKRUPTCY § 365.06[1][d][iii] (15th ed. revised) (arguing that sound bankruptcy policy supports the actual test). That may be so, but Congress is the policy maker, not the courts.

■ Policy arguments cannot displace the plain language of the statute; that the plain language of § 365(c)(1) may be bad policy does not justify a judicial rewrite. And a rewrite is precisely what the actual test requires. The statute expressly provides that a debtor in possession "may not assume *or* assign" an executory contract where applicable law bars assignment and the nondebtor objects. 11 U.S.C. § 365(c)(1) (emphasis added). The actual test effectively engrafts a narrow exception onto § 365(c)(1) for debtors in possession, providing that, as to them, the statute only prohibits assumption *and* assignment, as opposed to assumption *or* assignment. *See In re Fastrax*, 129 B.R. at 277 (admitting that, by adopting the actual test, the court reads the word "assume" out of subsection (c) with respect to debtors in possession).

### V.

■ Because the statute speaks clearly, and its plain language does not produce a patently absurd result or contravene any clear legislative history, we must "hold Congress to its words."[9] *Brooker*, 947 F.2d at 414-15. Accordingly, we hold that, where applicable nonbankruptcy law makes an executory contract nonassignable because the

7. We note that several courts have relied on this legislative history in rejecting the "hypothetical test" in favor of the "actual test." *See, e.g., Summit Invest. and Dev. Corp. v. Leroux*, 69 F.3d 608, 613 (1st Cir.1995); *In re Fastrax*, 129 B.R. at 277. For the reasons set forth herein, we respectfully disagree with their analysis.

8. Catapult also would find favorable legislative history in the enactment of § 365(c)(2). Its argument draws an inference against the hypothetical test from Congress' enactment of subsection (c)(2) in the face of statements in the House report implying that (c)(2) is unnecessary in light

of (c)(1). As noted above, subsection (c)(2) is not inconsistent with the literal reading of subsection (c)(1), and thus its adoption does not undermine the hypothetical test.

9. We emphasize that our holding today is based on the plain language of the statute, and does not rely on the "separate entity" theory touched on in *In re West Elecs.*, 852 F.2d at 83, and subsequently discredited in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984).

identity of the nondebtor party is material, a debtor in possession may not assume the contract absent consent of the nondebtor party. A straightforward application of § 365(c)(1) to the circumstances of this case precludes Catapult from assuming the Perlman licenses over Perlman's objection. Consequently, the bankruptcy court erred when it approved Catapult's motion to assume the Perlman licenses, and the district court erred in affirming the bankruptcy court.

REVERSED.