**In re LIL' THINGS, INC., Debtor.**

**Bankruptcy No. 397–35356–HCA–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

May 21, 1998.

Deborah Schrier–Rape, Michelle Larson, Andrews & Kurth, L.L.P., Dallas, TX, for Debtor.

Cathy Hershcopf, Siegel, Sommers & Schwartz, L.L.P., New York City, for Creditors' Committee.

Emily Stacy Donahue, Jackson & Walker, L.L.P., Dallas, TX, for Michaels Stores, Inc.

R. Spencer Shytles, Graham, Bright & Smith, P.C., Dallas, TX, for Lincoln Property Company CSE, Inc., as Agent for Creekwalk, Inc.

## MEMORANDUM OPINION ON MOTION TO ASSUME AND ASSIGN NON–RESIDENTIAL REAL PROPERTY LEASE

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came before the Court for consideration, the Motion to Assume and Assign Non–Residential Real Property Lease ("Motion") filed by Lil' Things, Inc. ("Debtor") and the objection to the Motion ("Objection") filed by Lincoln Property Company CSE, Inc., as agent for Creekwalk, Inc. ("Lincoln"). This memorandum opinion constitutes findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 7052 and 9014.[1] The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

### I. Background Facts

The Debtor commenced this case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on June 10, 1997. As of the petition date, the Debtor owned and operated a chain of thirteen retail stores located in Texas, Arizona, Colorado, Oklahoma and California, selling furniture, toys and clothing for children in the age group of infant to six years of age. The Debtor filed for bankruptcy protection in order to close its less profitable stores and reorganize its remaining operations.

On November 20, 1997, the Debtor came before the Court at a status conference and indicated that it no longer had the ability to reorganize. The Debtor requested an expedited hearing to determine procedures for a liquidation of its operations. With the approval of the Court, on November 25, 1997, the Debtor initiated a liquidation of its assets, including the marketing of the Debtor's retail store leases. To facilitate the liquidation and sale, on December 19, 1997, the Debtor and the Creditors' Committee filed a joint motion seeking an order from the Court, pursuant to 11 U.S.C. § 365(a), authorizing the Debtor to reject certain unexpired real property leases while maintaining the right to assume and assign other specified leases. At a hearing on January 5, 1998, the

---

1. This Motion came before the Court for hearing on January 14th and 20th 1998, at which time the Court issued its ruling that the Debtor would be allowed to assume and assign the lease to Michael's Stores, Inc. ("Michael's"); and the Court made oral findings of fact and conclusions of law ("Findings"). Counsel for Michael's was asked to present an order and findings of fact and conclusions of law tracking the Court's oral ruling at the hearing, so that the assignment could move forward immediately. At the January 20th hearing, the Court indicated that it would supplement its Findings with this memo-

randum opinion and would go into greater detail on the issue of whether Bankruptcy Code § 365(c) prevents the Debtor from assigning the lease to Michael's. On January 30, 1998, Lincoln filed a motion to amend or add to the Court's Findings, and an objection to the Court's Findings. A response to the motion and objection was filed by the Debtor, the Creditors' Committee and Michael's on February 9, 1998. The Court will address the motion, objection and response in this memorandum opinion, and supplements its previous findings as indicated.

Court granted the Debtor's motion to reject and instructed the Debtor to file a motion to assume and assign any other leases on or before January 16, 1998, or they would be deemed rejected by the Debtor.

One of these store leases was the lease on store # 108 located in Plano, Texas (the "Plano Lease"), which is the subject of the current Motion before the Court. The best offer to purchase the Plano Lease from the Debtor was from Michael's Stores, Inc. ("Michael's"). The Debtor filed a motion for approval of Michael's bid on January 9, 1998. The final bid by Michael's was in the amount of $95,000.00, $10,000.00 of which was tendered to the Debtor as earnest money at the time of the bid. Lincoln objected to the assumption and assignment to Michael's on various grounds, including Lincoln's contention that the debtor was prevented from assigning the lease to Michael's without Lincoln's consent, pursuant to the provisions of Bankruptcy Code § 365(c) and Texas Property Code § 91.005.

## II. Issue

Does 11 U.S.C. § 365(c) prevent the Debtor from assuming the Plano Lease and assigning it to Michael's over Lincoln's objection in light of the anti-assignment provision found in Texas Property Code § 91.005?[2]

## III. Analysis

Section 365(a) of the Bankruptcy Code allows a trustee or debtor in possession to assume an unexpired lease.[3] The debtor may then assign the lease to a third party pursuant to 11 U.S.C. § 365(f). Section 365(f) states in relevant part:

(f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

Thus, Lil' Things may generally assume any of its leases, including the Plano Lease, under 11 U.S.C. § 365(a) and may assign its leases in compliance with the provisions of § 365(f); however, both §§ 365(a) and (f) are subject to the limitations placed upon them by 11 U.S.C. § 365(c).

Section 365(c)(1) states in relevant part that:

The trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

---

**2.** Property Code § 91.005 contains the following provision: "During the term of a lease, the tenant may not rent the leasehold to any other person without the prior consent of the landlord." Tex.Prop.Code Ann. § 91.005 (Vernon 1995 & Supp.1998).

This provision has been interpreted by the Texas courts as a general prohibition against assignment, regardless of whether the lease contains a provision restricting assignments. *See Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.*, 938 S.W.2d 102, 112 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Dillingham v. Williams*, 165

S.W.2d 524, 526 (Tex.Civ.App.—El Paso 1942, writ ref'd w.o.m.).

**3.** 11 U.S.C. § 365(a) states:

Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

A debtor in possession generally has all of the rights, powers and duties of the trustee, including the right to assume and assign leases under § 365. *See* 11 U.S.C. § 1107(a).

(B) such party does not consent to such assumption or assignment.

Several courts have addressed the scope of § 365(c) and its interaction with § 365(f), and while most of the courts that have read the statute have found its meaning to be plain and unambiguous, the resulting interpretations have not led to a general consensus. Initially, some courts determined that the language in § 365(c) prevented the debtor from assuming its own contracts and leases. Other courts that have found that the limitation on assumptions and assignments found in § 365(c) is limited to contracts for personal services. While more recent decisions have found that § 365(c) contains no such limitation, and have tried to reconcile the resulting conflict between subsections (c) and (f) of § 365.

## A. Can the Debtor Assume the Lease?

■ For a debtor to assign a contract or lease, it must first be assumed.[4] If there has been a default under the contract or lease, assumption requires that a debtor:

(1) cures, or provides adequate assurance that [it] will promptly cure, such default;

(2) compensates, or provides adequate assurance that [it] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(3) provides adequate assurance of future performance under such contract or lease.[5]

Some courts have put into doubt a debtor's ability to assume its own executory contracts or unexpired leases in light of the language in § 365(c), which prevents both assumption and assignment where applicable law excuses the contracting party from accepting performance from or rendering performance to a third party, by finding that the pre-bankruptcy person or company, with whom the other party contracted, and the debtor in possession are materially distinct entities.[6]

One of these courts was the Third Circuit in *West Electronics,* which read § 365(c)(1) to direct the court to perform a hypothetical test: if an anti-assignment law precludes a hypothetical assignment from the debtor to a third party, then the debtor in possession cannot assume the contract.[7] In *West Electronics,* the debtor was a defense contractor that supplied Aim–9 missile launcher power supply units to the U.S. Air Force. The court found that 41 U.S.C. § 15, which prevents transfers of defense contracts, prevented the hypothetical assignment of the Aim–9 contract to another defense contractor. West Electronics, as debtor in possession, was therefore precluded under § 365(c)(1)(A) from assuming the contract because a pre-bankruptcy solvent contractor and an insolvent debtor in possession were materially distinct entities; and therefore, the government was excused from accepting performance from an entity with which it had not contracted.[8]

Most courts that have considered this "separate entity" theory have rejected it, and have criticized *West Electronic's* conclusion that a debtor in possession is somehow different from the pre-bankruptcy contracting party and can be prevented from assuming its contracts by § 365(c).[9] They have agreed

---

4. 11 U.S.C. § 365(f).

5. 11 U.S.C. § 365(b)(1).

6. *See In re Plum Run Serv. Corp.,* 159 B.R. 496 (Bankr.S.D.Ohio 1993); *In re West Elec., Inc.,* 852 F.2d 79 (3rd Cir.1988); *Pennsylvania Peer Review Org., Inc. v. United States (In re Pennsylvania Peer Review Org., Inc.),* 50 B.R. 640 (Bankr. M.D.Pa.1985); *In re Adana Mortgage Bankers, Inc.,* 12 B.R. 977 (Bankr.N.D.Ga.1980).

7. *In re West Elec., Inc.,* 852 F.2d 79 (3rd Cir. 1988).

8. *Id.* at 83.

9. *See In re G.P. Express Airlines, Inc.,* 200 B.R. 222 (Bankr.D.Neb.1996); *In re James Cable Partners, L.P.,* 154 B.R. 813 (Bankr.M.D.Ga.1993); *Texaco, Inc. v. Louisiana Land & Exploration Co.,* 136 B.R. 658 (M.D.La.1992); *In re Hartec Enter., Inc.,* 117 B.R. 865 (Bankr.W.D.Tex.1990); *In re Fastrax, Inc.,* 129 B.R. 274 (Bankr.M.D.Fla. 1991); *In re Ontario Locomotive & Indus. Railway Supplies,* 126 B.R. 146 (Bankr.W.D.N.Y. 1991); *In re Cardinal Indus., Inc.,* 116 B.R. 964 (Bankr.S.D.Ohio 1990); *Summit Inv. & Dev. Corp. v. LeRoux (In re LeRoux),* 167 B.R. 318 (Bankr.D.Mass.1994); *In re American Ship Bldg. Co., Inc.,* 164 B.R. 358 (Bankr.M.D.Fla.1994).

with Judge Higginbotham in his dissent in *West Electronics* where he stated:

I do not believe that a "solvent contractor and an insolvent debtor in possession going through bankruptcy," are different entities for the purposes of the Non–Assignment Clause. The interpretation of the Adana court notwithstanding, I think that provision really meant to avoid having the U.S. government contractually bound to a wholly separate entity that received an assignment from the actual contracting party. I do not believe that when it enacted Section 15 of Title 41, Congress considered the issue of whether a debtor in possession should be viewed as a party different than the debtor.... The government may well have the right to terminate the contract in issue on other grounds, but I am not convinced that 41 U.S.C. Section 15 is the appropriate vehicle for the severance of West Electronics' rights under the contract.[10]

This view is consistent with the one expressed by the Supreme Court in *N.L.R.B. v. Bildisco & Bildisco*,[11] which found the theory that a debtor in possession is a new entity separate and distinct from its pre-bankruptcy persona unrealistic when reconciling conflicting provisions of the National Labor Relations Act and the Bankruptcy Code. The *Bildisco* Court said:

Obviously if the debtor-in-possession were a wholly "new entity," it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place. For our purposes, it is sensible to view the debtor-in-possession as the same "entity" which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have done absent the bankruptcy filing.[12]

Following the lead of the Supreme Court, this Court also rejects the "separate entity" theory and finds that a debtor may assume its own contracts and leases if it complies with § 365(b)(1).[13]

## B. Does § 365(c)(1) Apply Only to Personal Services Contracts?

■ Most of the bankruptcy courts that first addressed the language of § 365(c)(1) found that it only applied to personal services contracts.[14] The seminal decision for this proposition is *In re Taylor Manufacturing, Inc.*[15] This is an odd twist of judicial interpretation because, the court's decision in *Taylor* does not solely limit the reach of § 365(c)(1) to contracts for personal services.[16] The court specifically found that § 365(f) was the general rule on assignability and the exception found in § 365(c) was "intended by Congress to be applied narrowly and to such circumstances as contracts for the performance of nondelegable duties."[17] Thus, according to the court in *Taylor*, personal services contracts are merely one type of contract which fell under the

---

10. *West Elec.*, 852 F.2d at 84 (citations omitted).

11. *N.L.R.B. v. Bildisco & Bildisco (In re Bildisco)* 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984).

12. *Id.*

13. The Court found that the Debtor was able to cure the defaults and provide adequate assurance of future performance under the Plano Lease in its findings of fact and conclusions of law, entered on January 22, 1998.

14. *See e.g., In re Sunrise Restaurants, Inc.*, 135 B.R. 149 (Bankr.M.D.Fla.1991); *In re Tom Stimus Chrysler–Plymouth, Inc.*, 134 B.R. 676 (Bankr.M.D.Fla.1991); *In re Raby*, 139 B.R. 833 (Bankr.N.D.Ohio 1991); *Abney v. Fulton County,*

*Georgia (In re Fulton Air Service, Inc.)*, 34 B.R. 568 (Bankr.N.D.Ga.1983); *In re Haffner's 5 Cent to $1.00 Stores, Inc.*, 26 B.R. 948 (Bankr.N.D.Ind. 1983); *In re Bronx–Westchester Mack Corp.*, 20 B.R. 139 (Bankr.S.D.N.Y.1982); *In re Boogaart of Florida, Inc.*, 17 B.R. 480 (Bankr.S.D.Fla. 1981); *Varisco v. Oroweat Food Co. (In re Varisco)*, 16 B.R. 634 (Bankr.M.D.Fla.1981); *In re Taylor Mfg., Inc.*, 6 B.R. 370 (Bankr.N.D.Ga. 1980).

15. *Taylor*, 6 B.R. 370 (Bankr.N.D.Ga.1980).

16. *See Rieser v. Dayton Country Club Co. (In re Magness)*, 972 F.2d 689, 694–695 (6th Cir.1992) (the proposition actually originated with Collier on Bankruptcy).

17. *Taylor*, 6 B.R. at 372.

§ 365(c)(1)(A) exception, and not the only type.

The circuit courts which have considered whether § 365(c) is limited solely to personal services contracts, have found that § 365(c) was not written so narrowly by the drafters as to put such a drastic limitation on its scope.[18] As far as this Court is concerned, the Fifth Circuit put this issue to rest in *Braniff Airways*.[19] *Braniff Airways* involved the assignment of aircraft landing slot leases by the now defunct Braniff Airways to another airline. Under the Washington Airport Act and FAA regulations, the United States Government, a non-debtor third party to the lease, was excused from accepting performance from an assignee. The court found that the assignment was barred by § 365(c)(1)(A), and said:

> It may well be that the impetus for Congress' enactment of § 365(c) was to preserve the pre-Code rule that "applicable law" precluding assignment of personal service contracts is operative in bankruptcy. However, the drafters actually codified a much broader principle. Surely if Congress had intended to limit § 365(c) specifically to personal services contracts, its members could have conceived of a more precise term than "applicable law" to convey that meaning.[20]

Therefore, the only question left for this Court to decide is where the reach of § 365(c) ends. If it is interpreted too broadly it will swallow up a debtor's ability to assign its leases granted by Congress in § 365(f), which expressly provides that a lease may be assigned by the debtor "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in

applicable law, that prohibits, restricts, or conditions the assignment."[21]

## C. Reconciling §§ 365(c)(1) and 365(f).

Several Circuit courts of appeal have taken on the task of reconciling the seemingly "inescapable conflict" between subsection (f) of § 365, which allows the debtor to assume and assign its contracts and leases notwithstanding applicable law or a provision in the contract to the contrary; and subsection (c), which prohibits or restricts assumption and assignment where applicable law excuses a party from accepting performance from an entity other than the debtor.[22]

The first reported attempt was made by the First Circuit in *In re Pioneer Ford Sales, Inc.*[23] In *Pioneer Ford*, the court found that the reach of § 365(c) was not limited to personal services contracts, but when faced with the resulting conflict between subsections (c) and (f) if no limit at all is placed on the language in subsection (c), the court derived the following explanation:

> As a matter of logic, however, we see no conflict, for (c)(1)(A) refers to state laws that prohibit assignment "whether or not" the contract is silent, while (f)(1) contains no such limitation. Apparently (f)(1) includes state laws that prohibit assignment only when the contract is not silent about assignment; that is to say, state laws that enforce contract provisions prohibiting assignment. These state laws are to be ignored. The section specifically excepts (c)(1)(A)'s state laws that forbid assignment even when the contract is silent; they are to be heeded.[24]

In other words, subsection (f) only applies to assignments that are barred by legally en-

---

**18.** See *City of Jamestown Tennessee v. James Cable Partners, L.P. (In re James Cable Partners, L.P.)*, 27 F.3d 534 (11th Cir.1994); *Metropolitan Airports Commission v. Northwest Airlines (In re Midway Airlines, Inc.)*, 6 F.3d 492 (7th Cir.1993); *Rieser v. Dayton Country Club Co. (In re Magness)*, 972 F.2d 689, 694–695 (6th Cir.1992); *In Matter of West Elec.*, 852 F.2d 79, 83 (3rd Cir. 1988); *In re Pioneer Ford Sales, Inc.*, 729 F.2d 27, 29 (1st Cir.1984); and *In re Braniff Airways, Inc.*, 700 F.2d 935, 943 (5th Cir.1983).

**19.** *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir.1983).

**20.** *Braniff Airways, Inc.*, 700 F.2d at 943 (citation omitted).

**21.** 11 U.S.C. § 365(f)

**22.** See *In re Catron*, 158 B.R. 629, 636 (Bankr. E.D.Va.1993) (stating that the two subsections "simply cannot be reconciled").

**23.** *Pioneer Ford*, 729 F.2d 27 (1st Cir.1984).

**24.** *Id.* at 29 (citation omitted).

forceable contractual provisions between the parties, while (c)(1)(A) applies to state laws that bar assignment where the contract is silent.

This reconciliation of the conflicting provisions in § 365 by the First Circuit was flatly rejected by the Sixth Circuit in *In re Magness*.[25] The *Magness* court said:

> There is simply nothing in the language of § 365(f) which supports the limitation read into it by [the *Pioneer Ford*] court.... We must read sections 365(f) and (c) together. At first, it might seem that they are not consistent, but a careful parsing of the provisions suggests that § 365(f) contains the broad rule and § 365(c) contains a carefully crafted exception to the broad rule made necessary by general principles of our common law and our constitution.... Subsection (f) states that although the contract or applicable law prohibits assignment, these provisions do not diminish the broad power to assume and assign executory contracts granted the trustee by § 365(a). In other words, a general prohibition against the assignment of executory contracts, i.e., by contract or "applicable law," is ineffective against the trustee.... However, subsection (f), by specific reference to subsection (c), allows one specific circumstance in which the power of the trustee may be diminished. Subsection (c) states that if the attempted assignment by the trustee will impact upon the rights of a non-debtor third party, then any applicable law protecting the right of such party to refuse to accept from or render performance to an assignee will prohibit assignment by the trustee. While subsections (f) and (c) appear contradictory by referring to "applicable law" and commanding opposite results, a careful reading reveals that each subsection recognizes an "applicable law" of markedly different scope.[26]

The court then cited to the concurring opinion of Judge Guy for a more thorough explanation of the distinct meanings of "applicable law" in the two sections. In his concurring opinion, Judge Guy states:

> The two sections refer to completely different legal concerns, with § 365(f) covering "applicable law" (and contractual clauses) prohibiting or restriction assignments as such, and § 365(c) embracing legal excuses for refusing to render or accept performance, regardless of the contract's status as "assignable" according to state law or its own terms.[27]

He concluded that an "applicable law" under § 365(c) is a law "which excuses a contracting party from rendering performance to, or accepting performance from, a third person or entity where the identity of the original contracting party was material."[28]

The analysis used in *Magness* was adopted by the district court in *In re Antonelli*,[29] which was subsequently affirmed without a published opinion by the Fourth Circuit. The district court in *Antonelli* found that a provision in the Uniform Partnership Act was a rule prohibiting assignment rather than a rule excusing performance, and therefore § 365(f) applied.[30] However, the court also found that the analysis could not stop there, but rather the question required a further inquiry—"whether the assignment would violate the principle embodied in § 365(c)(1) that the non-debtor party to a contract is excused from performance if the identity of the debtor is a material condition of the contract when considered in the context of the obligations which remain to be performed under the contract."[31] The court reasoned that:

> This principle clearly brings within the ambit of Section 365(c) the classic "personal services" contracts which all courts agree cannot be assigned under that section. It also covers most cases where con-

---

**25.** *Rieser v. Dayton Country Club Co. (In re Magness)*, 972 F.2d 689, 695 (6th Cir.1992).

**26.** *Magness*, 972 F.2d at 695.

**27.** *Id.* at 699.

**28.** *Id.* at 699–700.

**29.** *In re Antonelli*, 148 B.R. 443, 448 (Bankr. D.Md.1992), *aff'd*, 4 F.3d 984 (4th Cir.1993).

**30.** *Id.*

**31.** *Id.*

tracts are held to be non-assignable because they impose upon the debtor duties which are said to be "non-delegable."[32]

The Eleventh Circuit in *James Cable Partners,* also recognized the apparent conflict between subsections (c) and (f) of section 365.[33] The issue before the court was whether a cable franchise with the city of Jamestown, Tennessee could be assumed and assigned pursuant to the provisions of section 365. The court reasoned that § 365 should be read to give effect to both subsections (c) and (f) and found that section 365(f)(1) states the general rule that a trustee (or debtor in possession) may make an assignment even where applicable law or a contract provision prohibits assignment, and that § 365(c) states a limitation to this rule and refers to applicable law other than general prohibitions barring assignment.[34] The court said:

"A statute should be construed so that effect is given to all of its provisions, so that no part of it will be inoperative or superfluous, void or insignificant." Subsection (f) states that "applicable law" prohibiting assignment of an executory contract does not bar assignment of an executory contract by a trustee (or debtor in possession). Thus the "applicable law" to which subsection (c) refers must mean "applicable law" other than general prohibitions barring assignment.... A general prohibition against assignment does not excuse the City from accepting performance from a third party within the meaning of § 365(c)(1). In order to be excused from accepting performance, the City would need to point to applicable law such as a Tennessee law that renders performance under the cable franchise agreement nondelegable.[35]

Although the court's decision turned on a provision in the lease between Midway Airlines and the Metropolitan Airports Com-

mission which allowed assignments in bankruptcy under certain conditions, the Seventh Circuit said as much the same thing in *Metropolitan Airports Commission v. Northwest Airlines:*

Section 365(c) is an exception to the general rule that a bankruptcy trustee may freely assign and delegate a debtor's rights and duties under his executory contracts and unexpired leases. Its purpose is rather narrow: to prevent a trustee from forcing a party to accept performance from, or provide performance to, someone other than the party with whom it contracted in those situations where the identity of the party is central to the obligation itself. The paradigmatic example of such an agreement is the so-called "personal services contract," a contract entered into on the basis of the "character, reputation, taste skill, or discretion of the party that is to render performance." ... [T]he payment of rent pursuant to a lease is hardly the type of performance that depends upon the identity of the party that is to perform, i.e., the lessee.[36]

The view expressed, in different ways, by the majority of circuit courts to address the conflicting language between subsections (c) and (f) of § 365; therefore, is that subsection (c) must have some limitation placed upon it to give effect to subsection (f). In other words, the language found in § 365(f) is the general rule, and § 365(c) is a more narrowly defined exception to that rule.

## IV. Conclusion

After an in-depth review of all of the circuit court decisions and most of the district and bankruptcy court decisions in this area, and keeping in mind that a statute should not be read in a vacuum, but should be construed in a way that gives meaning and effect to all its provisions,[37] this Court finds that

---

**32.** *Id.*

**33.** *City of Jamestown Tennessee v. James Cable Partners, L.P. (In re James Cable Partners, L.P.),* 27 F.3d 534, 538 (11th Cir.1994) (stating that "§ 365(c)(1) should not be read in a vacuum").

**34.** *Id.*

**35.** *James Cable Partners,* 27 F.3d 534, 538 (citation omitted).

**36.** *Metropolitan Airports Comm'n. v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.),* 6 F.3d 492, 495 (7th Cir.1993) (citation omitted).

**37.** *United States v. Nordic Village, Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181

§ 365(f)(1) states the general rule that a trustee or debtor in possession may assign an executory contract notwithstanding "applicable law" that prohibits assignment, while § 365(c)(1)(A) represents an exception to that rule where applicable law protects the right of the non-debtor contracting party to refuse to accept from or render performance to an assignee, and does not apply to general prohibitions on assignments. Texas Property Code § 91.005 does not fall within the ambient of § 365(c)(1)(A), but is merely a general prohibition against assignments made without consent of the lessor.

This outcome is also consistent with the basic rationale behind § 365 as a whole: giving debtors the ability to assign their valuable leases and contracts, while offering some protection to the third parties with which they have contracted. Pursuant to §§ 365(a) and (f) a debtor's contracts and leases are generally assumable and assignable, because these are some of the most valuable assets of most bankruptcy estates. If this were not the rule, it would thwart one of the Code's basic underlying goals of maximizing value for the creditors of the bankruptcy estate. However, § 365(c)(1)(A) acts to balance the rights of third parties who contracted with the debtor and whose rights may be prejudiced by having the contract or lease performed by an entity with which they did not enter into the agreement. This right becomes paramount, under § 365(c)(1)(A), where the identity of the party rendering performance under the contract is material to the contract, and the contract is non-delegable under applicable non-bankruptcy law.

For the above stated reasons, the Court finds that 11 U.S.C. § 365(c) does not prevent the Debtor from assuming the Plano Lease and assigning it to Michael's. Further, the Court finds that the motion to amend or add to and objection to the Court's Findings should be denied, because the Findings are supported by the evidence presented and the objections to the Court's conclusions

(1992); *Reich v. Arcadian Corp.*, 110 F.3d 1192,

of law are more appropriately addressed on appeal.