In re **FOOTSTAR, INC., et al., Debtors.**

No. 04 B 22350(ASH).

United States Bankruptcy Court, S.D. New York.

Feb. 16, 2005.

Weil, Gotshal & Manges LLP, By Martin J. Bienenstock, Esq., Paul M. Basta, Esq., Stephen D. Kahn, Esq., Penny P. Reid, Esq., New York City, for Debtors.

Wachtell, Lipton, Rosen & Katz, By Amy R. Wolf, Esq., Robert B. Mazur, Esq., Michael A. Charish, Esq., Emil A. Kleinhaus, Esq., New York City, for Kmart Corporation.

Kronish Lieb Weiner & Hellman LLP, By Lawrence C. Gottlieb, Esq., Jay R. Indyke, Esq., Richard S. Kanowitz, Esq., Brent Weisenberg, Esq., New York City, for the Official Committee of Unsecured Creditors.

Kramer Levin Naftalis & Frankel LLP, By Philip Bentley, Esq., David M. Feldman, Esq., Matthew J. Williams, Esq., New York City, for the Official Committee of Equity Security Holders.

### DECISION ON MOTION TO ASSUME EXECUTORY CONTRACTS

ADLAI S. HARDIN, JR., Bankruptcy Judge.

Before the Court is the debtors' motion to assume their executory contracts with Kmart Corporation ("Kmart") pursuant to Section 365(a) of the Bankruptcy Code, 11 U.S.C. § 365(a). Kmart has opposed the motion, asserting that assumption is barred (i) as a matter of law under Section 365(c)(1), (ii) by the debtors' breaches of contract and (iii) because the debtors cannot provide adequate assurance of future performance. In addition, Kmart has cross-moved for relief from the automatic

stay so that it may terminate the contracts.

This decision concerns only Kmart's legal objection based on Section 365(c)(1). That objection is overruled as a matter of law.

### Jurisdiction

This Court has jurisdiction over these proceedings under 28 U.S.C. §§ 1334(a) and 157(a) and the standing order of referral to Bankruptcy Judges signed by Acting Chief Judge Robert J. Ward on July 10, 1984. These are core proceedings under 28 U.S.C. § 157(b).

### Background

The debtors filed some 2,529 cases in early March 2004 under Chapter 11 of the Bankruptcy Code. The debtors' Chapter 11 cases have been procedurally consolidated under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. A creditors' committee and an equity committee were appointed in March and June of 2004, respectively.

As of the commencement date the debtors operated two distinct business segments, (i) discount and family footwear, referred to as "Meldisco," and (ii) athletic footwear and apparel, or "Athletic." The debtors have largely divested the Athletic segment of the business through sales of assets and store closings. The debtors also report substantial progress in "streamlining" the Meldisco segment to eliminate unprofitable operations by sales of assets, store closings and termination of the debtors' operation of footwear departments in Gordman's stores and in Federated stores.

What remains of the debtors' operations is a reduced, and profitable, Meldisco division. Some ninety-five percent or more of the debtors' current revenues are generated from sales of discount family footwear

at over 1,500 shoe departments located in Kmart stores.

The governing contract is a so-called "Master Agreement" between debtor Footstar, Inc. ("Footstar") and Kmart effective as of July 1, 1995. Pursuant to the Master Agreement, each shoe department in a Kmart store is operated by a separate "Shoemart Corporation" owned fifty-one percent by Footstar and forty-nine percent by Kmart. Each Shoemart Corporation enters into a "Sub–Agreement" with Kmart which provides that the Shoemart Corporation has the exclusive right to operate a footwear department in the particular Kmart store.

It is the Master Agreement and the Sub–Agreements (collectively, the "Agreements") that the debtors seek to assume. Noting that Kmart assumed these Agreements in its own Chapter 11 case in May 2003, the debtors assert that the Agreements have been and currently are highly profitable for Kmart, and for the debtors themselves. Assumption is critical to the debtors' ability to reorganize. The debtors assert that assumption will enable them to confirm a plan providing for one hundred percent payment to creditors with equity unimpaired. Failure to assume will likely result in liquidation of the debtors and only partial recovery for creditors.

### Discussion

**I.  Section 365(a)**

■ Section 365(a) provides that the trustee, "subject to the Court's approval, may assume or reject any executory contract or unexpired lease of the debtor." As correctly stated by the debtors: "The standard to be applied by a court in determining whether an executory contract or unexpired lease should be assumed is the 'business judgment' test, which is premised upon the debtor's business judgment that

assumption would be beneficial to its estate." *See* Debtors' Motion ¶ 16 at page 6 and cases cited there and in ¶ 17.

In this case it is clearly in the debtors' interest to assume the Agreements, and Kmart does not argue to the contrary.

## II. *Section 365(c)(1)*

■ Section 365(c)(1) provides, in pertinent part, as follows:

(c) The trustee may not assume or assign any executory contract ... if—

(1) (A) applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession ...; and

(B) such party does not consent to such assumption or assignment....

The parties have addressed two basic issues in their briefs and oral arguments. The second issue is whether "applicable law" excuses Kmart from accepting performance from or rendering performance to an entity other than the debtors—to oversimplify, whether the Agreements are non-assignable.[1] Since I conclude that Section 365(c)(1) is not applicable to a debtor in possession which seeks to assume, but not assign, its non-assignable contract, I do not reach this second issue.

The threshold issue, as addressed by the parties here and a number of courts, is a question of statutory interpretation—must the word "or" in the statutory language "assume or assign" be read literally, *i.e.*, as a disjunctive, or should it be construed in context as the functional equivalent of the conjunction "and." The issue does not arise if a debtor's purpose in assuming is to assign the contract to a third party. But where the "actual" purpose of the debtor in possession is not to assign the contract but to perform it, or rather, to continue performing it, the issue has divided the courts.

One Circuit Court in two separate decisions, *Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489 (1st Cir.), *cert. denied,* 521 U.S. 1120, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997) and *Summit Inv. & Dev. Corp. v. Leroux,* 69 F.3d 608 (1st Cir.1995), and the great majority of lower courts[2] have taken the view that the courts should apply an "actual test" in construing the statutory language so as to permit assumption where the debtor in possession in fact does not intend to assign the contract. The First Circuit articulated the "actual test" as follows in *Institut Pasteur v. Cambridge Biotech Corp.*, 104 F.3d at 493 (citations omitted):

We rejected the proposed hypothetical test in *Leroux,* holding instead that subsections 365(c) and (e) contemplate a case-by-case inquiry into whether the nondebtor party ... *actually* was being "forced to accept performance under its executory contract from someone other

---

1. Article 16 of the Master Agreement expressly prohibits assignment.

2. *See, e.g., In re Ontario Locomotive & Indus. Ry. Supplies (U.S.), Inc.,* 126 B.R. 146 (Bankr. W.D.N.Y.1991); *In re Mirant Corp.,* 303 B.R. 319 (Bankr.N.D.Tex.2003); *In re Cajun Elec. Members Comm. v. Mabey (In re Cajun Elec. Power Co-op., Inc.),* 230 B.R. 693 (Bankr. M.D.La.1999); *In re Lil' Things, Inc.,* 220 B.R. 583 (Bankr.N.D.Tex.1998); *In re GP Express Airlines, Inc.,* 200 B.R. 222 (Bankr.

D.Neb.1996); *In re American Ship Bldg. Co., Inc.,* 164 B.R. 358 (Bankr.M.D.Fla.1994); *Texaco Inc. v. Louisiana Land & Exploration Co.,* 136 B.R. 658 (M.D.La.1992); *In re Fastrax, Inc.,* 129 B.R. 274 (Bankr.M.D.Fla. 1991); *In re Cardinal Indus., Inc.,* 116 B.R. 964 (Bankr.S.D.Ohio 1990); *In re Hartec Enters., Inc.,* 117 B.R. 865 (Bankr.W.D.Tex. 1990), *vacated on other grounds,* 130 B.R. 929 (W.D.Tex.1991).

than the debtor party with whom it originally contracted." Where the particular transaction envisions that the debtor-in-possession would assume and continue to perform under an executory contract, the bankruptcy court cannot simply presume as a matter of law that the debtor-in-possession is a legal entity *materially* distinct from the prepetition debtor with whom the nondebtor party ... contracted. Rather, "sensitive to the rights of the nondebtor party ...," the bankruptcy court must focus on the performance actually to be rendered by the debtor-in-possession with a view to ensuring that the nondebtor party ... will receive the "full benefit of [its] bargain." (emphasis in original)

The courts applying the "actual test" reject an interpretation based on a "hypothetical" (but not real) intent to assign the contract in contravention of the balance of the statutory provision. These courts emphasize the fact that a literal interpretation of the disjunctive "or" is utterly incongruent with the objectives of the Bankruptcy Code and would lead to the anomalous result that a debtor in possession would be deprived of its valuable but unassignable contract solely by reason of having sought the protection of the Bankruptcy Court, even though it did not intend to assign it.

Three Circuit Courts have interpreted the statutory language in accordance with its "plain meaning," thereby adopting what has been referred to as the "hypothetical test." *RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257 (4th Cir.2004); *Perlman v. Catapult Entm't, Inc. (In re Catapult Entm't, Inc.)*, 165 F.3d 747 (9th Cir.1999); *In re West Elecs., Inc.*, 852 F.2d 79 (3d Cir.1988). *See also, In re Catron*, 158 B.R. 629 (E.D.Va.1993); *aff'd without op.*, 25 F.3d 1038 (4th Cir. 1994).[3] These courts disdain to construe the "or" to mean "and" in the phrase "assume or assign," and they apply the language "assume or assign" literally as it is written, reasoning that if the statute as written produces results which seem at odds with the basic objectives of the Bankruptcy Code, the remedy lies with Congress, not the courts.

I agree with the outcome reached by the majority of the courts, which have adopted the "actual test," but I suggest a somewhat different focus for analysis of Section 365. The statute can and should be construed in accordance with its "plain meaning" to reach a conclusion which is entirely harmonious with both the objective sought to be obtained in Section 365(c)(1) and the overall objectives of the Bankruptcy Code, without construing "or" to mean "and."

Section 365(c)(1) states that "[t]he *trustee* may not assume or assign ..." (emphasis supplied). The key word is "trustee." The statute *does not* say that the debtor or debtor in possession may not assume or assign—the prohibition applies on its face to the "trustee." In this case there is no trustee. Here, it is the debtors who seek to assume the Agreements. Nothing in the Bankruptcy Code prohibits the debtors from assuming the Agreements. To construe "trustee" in Section 365(c)(1) to mean "debtors" or "debtors in possession" would defy the "plain meaning" of the statute as written by Congress and could be characterized as the same sort of judi-

---

**3.** The parties have cited *City of Jamestown v. James Cable Partners, L.P. (In re James Cable Partners, L.P.)*, 27 F.3d 534 (11th Cir.1994), *rehearing en banc denied*, 38 F.3d 575 (11th Cir.1994), as a fourth case adopting the "hypothetical test." While the Court appears to accept the hypothetical test, without analysis, the actual holding of that case was that Section 365(c)(1) was not applicable because "applicable law" did *not* excuse the City of Jamestown from accepting performance from an entity other than the debtor.

cial legislation as Kmart condemns in the cases that apply the "actual test" to construe "or" as "and."

Nowhere does the Bankruptcy Code define "trustee" as synonymous with "debtor" or "debtor in possession." Quite the contrary, when the Bankruptcy Code refers to both "trustee" and "debtor" (or "debtor in possession") in the same statutory provisions, the two terms are invariably invested with quite different meanings. Indeed, such is the case with Section 365(c)(1), (e)(1) and (2) and (f). Congress has been quite careful in the use of the terms "trustee" and "debtor" or "debtor in possession", as shown (with precise relevance to this dispute) in the 1984 amendment to Section 365(c)(1), discussed near the end of this decision.

Under the Code, the debtor remains the debtor in possession unless and until a trustee is appointed by court order under Section 1104. When a trustee is appointed, the debtor is no longer a debtor "in possession"—the trustee succeeds to all the rights and properties of the debtor, which is thereby displaced from its property interests. The appointment of a trustee effects a statutory transfer or assignment of the debtor's property, including its contractual relationships, from the debtor to the trustee. *See* 11 U.S.C. § 323(a) ("The trustee in a case under this title is the representative of the estate."); 11 U.S.C. § 323(b) ("The trustee in a case under this title has capacity to sue and be sued."); *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 352–53, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) ("Congress contemplated that when a trustee is appointed, he assumes control of the business, and the debtor's directors are 'completely ousted.' ") (quoting H.R. REP. No. 95–595, pp. 220–21 (1977)); *The Mediators, Inc. v. Manney (In re Mediators, Inc.),* 105 F.3d 822, 825–26 (2d Cir.1997) ("The

Bankruptcy Code places a trustee in the shoes of the bankrupt corporation and affords the trustee standing to assert any claims that the corporation could have instituted prior to filing its petition for bankruptcy."); *Honigman v. Comerica Bank (In re Van Dresser Corp.),* 128 F.3d 945, 947 (6th Cir.1997) ("A debtor's appointed trustee has the *exclusive* right to assert the debtor's claim." (emphasis original)); *Official Comm. of Unsecured Creditors v. Bechtle (In re Labrum & Doak, LLP ),* 237 B.R. 275, 293 (Bankr.E.D.Pa.1999) ("Under 11 U.S.C. § 544(a)(1), the trustee stands in the shoes of a[n] assignee for the benefit of all creditors."); COLLIER ON BANKRUPTCY ¶ 323.01[1] (15th ed. 2004) ("[B]y section 323(a) the trustee is given full authority to represent the estate and to dispose of the debtor's property that makes up the estate."); NORTON, BANKRUPTCY LAW AND PRACTICE 2D § 79:14 (1998) ("Upon appointment the trustee steps into the shoes of the debtor and the creditor body as a whole in order to exercise their rights to sue on behalf of the estate.").

In short, the debtor and the trustee in a Chapter 11 case are entirely different parties. It bears repeating that no provision of the Bankruptcy Code states in words or substance that references in the Code to "trustee" are to be construed to mean "debtor" or "debtor in possession." A basic misconception, in this Court's view, underlies the three Circuit Court decisions adopting the "hypothetical" test, in that all three proceed from the premise, expressed or unstated, that "trustee" as used in Section 365(c)(1) means "debtor in possession." *See In re Catapult Entm't, Inc.,* 165 F.3d 747, 750, where the Court states, without citation to the Code, "it is well-established that § 365(c)'s use of the term 'trustee' includes Chapter 11 debtors in possession," and *In re West Elecs., Inc.,* 852 F.2d 79, 82, where the Court quotes

Section 365(c), including in the quote the bracketed language:

"(c) The trustee **[which includes the debtor in possession [ftn. 1]]** ..." (emphasis supplied).

Footnote 1 referred to in this quotation cites to Section 1107 of the Bankruptcy Code, which is indeed a relevant section of the Code for this analysis, but which does not provide in words or substance that "trustee" means or includes "debtor in possession."

Section 1107(a) defines the "[r]ights, powers, and duties of debtor in possession." It states:

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

Section 1107(a) thus grants to the debtor in possession "all the rights ... and powers ... of a trustee...." Under this grant, the debtor in possession has the right to assume contracts provided in Section 365(a). Since the *trustee's* power to assume under Section 365(a) is qualified by Section 365(c)(1), however, the critical language in Section 1107 for purposes of this dispute is the prefatory clause "[s]ubject to any limitations on a trustee...."

Consistent with the prefatory clause in Section 1107(a), many decisions have held that various statutory limitations on the powers of a Chapter 11 trustee apply to debtors in possession. For example: *Harvis Trien & Beck, P.C. v. Federal Home Loan Mortg. Corp. (In re Blackwood As-*

*socs., L.P.)*, 153 F.3d 61, 67 (2d Cir.1998) (applying the limitation in 363(c)(2) to a debtor in possession that cash collateral cannot be used, sold, or leased unless entities with interest consent or the court authorizes it); *Unsecured Creditors Comm. v. Marepcon Fin. Corp. (In re Bumper Sales, Inc.)*, 907 F.2d 1430, 1440–41 (4th Cir.1990) (same); *Eagle Ins. Co. v. BankVest Capital Corp. (In re BankVest Capital Corp.)*, 360 F.3d 291, 295 (1st Cir.), *cert. denied,* —— U.S. ——, 124 S.Ct. 2874, 159 L.Ed.2d 776 (2004) (applying the limitation in 365(b)(1) to a debtor in possession that a contract cannot be assumed unless the debtor in possession cures the default, compensates for any pecuniary loss resulting from default, and provides adequate protection of future performance); *South St. Seaport Ltd. Pshp. v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 761 (2d Cir.1996) (same); *Pieco, Inc. v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys., Inc.)*, 173 B.R. 844, 857 (S.D.N.Y.1994) (same); *In re United Airlines, Inc.*, 368 F.3d 720, 722 (7th Cir.2004) (applying the limitation in 365(c)(2) to a debtor in possession that an executory contract or unexpired lease cannot be assumed if it is a contract to make a loan or extend other debt financing); *Tully Constr. Co. v. Cannonsburg Envtl. Assocs., Ltd. (In re Cannonsburg Envtl. Assocs., Ltd.)*, 72 F.3d 1260, 1265 (6th Cir.1996) (same); *Transamerica Commercial Fin. Corp. v. Citibank, N.A. (In re Sun Runner Marine, Inc.)*, 945 F.2d 1089, 1092 (9th Cir.1991) (same); *Watts v. Pennsylvania Housing Finance Co.*, 876 F.2d 1090, 1095 (3d Cir.1989) (same); *In re Teligent, Inc.*, 268 B.R. 723, 732–33 (Bankr.S.D.N.Y.2001) (same); *BNY Fin. Corp. v. Masterwear Corp. (In re Masterwear Corp.)*, 229 B.R. 301, 308 (Bankr.S.D.N.Y.1999) (same); *Hart Envtl. Mgmt. Corp. v. Sanshoe Worldwide Corp. (In re Sanshoe Worldwide Corp.)*, 993 F.2d 300, 302 (2d Cir.

1993) (applying the limitation in 365(c)(3) to a debtor in possession that a lease of nonresidential real property cannot be assumed if it has been terminated under applicable nonbankruptcy relief prior to the order for relief); *In re 611 Sixth Ave. Corp.*, 191 B.R. 295, 298 (Bankr.S.D.N.Y. 1996) (same). In each of these cases, the statutory limitation in question, such as the requirement in Section 365(b) to cure defaults and provide adequate assurance of future performance, or the requirement in Section 363(c)(2) to not use, sell, or lease cash collateral unless entities with interest consent or the court authorizes it, applies equally to debtors in possession as a matter of simple logic and common sense. In each such case, there is no basis to distinguish between a trustee and a debtor in possession with respect to the particular statutory limitation.

There is no doubt that the prefatory clause in Section 1107 applies to the limitation on assumption and assignment prescribed in Section 365(c)(1). However, merely substituting "debtor in possession" for "trustee" in Section 365(c)(1) does not illuminate the limitation set forth by Congress in Section 365(c)(1), nor how that limitation should, or even can, be applied to a debtor in possession under Section 1107. The question presented is whether the limitation in Section 365(c)(1) *as applied to the debtor in possession* prohibits assumption without assignment. Analysis shows that this particular limitation, by its terms, as applied to a debtor in possession, does not prohibit assumption without assignment.

Preliminarily, it should be noted that Section 365(c)(1) is quite logical and sensible as written if one construes "trustee", in accordance with its plain meaning, to mean trustee, not debtor in possession. The basic objective of the limitation under Section 365(c)(1) is vindication of the right

under applicable law of a contract counterparty to refuse to accept performance from or render performance to an entity "*other than* the debtor or the debtor in possession." A trustee *is* an "entity other than the debtor or the debtor in possession"—the trustee is an entirely different entity, who has succeeded by operation of the Bankruptcy Code to all the debtor's property including contracts. Since this *de facto* statutory assignment of the contract to the trustee is in derogation of the basic objective of Section 365(c)(1), it makes perfect sense to say that the trustee may not assume the contract, and also that the trustee may not assign it—hence, "may not assume *or* assign." But it makes no sense to read "trustee" to mean "debtor in possession" either in context of the statutory provision or under the plain meaning canon, and nothing in the Bankruptcy Code justifies such a reading. Indeed, where the debtor seeks to assume but not assign a contract, to read the statute to say that "the *debtor in possession* may not assume ... any contract if ... applicable law excuses [the counterparty] ... from accepting performance from or rendering performance to an entity *other than the debtor in possession* ..." would render the provision a virtual oxymoron, since mere assumption (without assignment) would *not* compel the counterparty to accept performance from or render it to "an entity other than" the debtor.

The same analysis compels the conclusion that the constraint on assumption without assignment imposed on a trustee under Section 365(c)(1)—by reason of the fact that a trustee *is* an "entity other than the debtor or the debtor in possession"—by its own terms cannot apply to a debtor in possession, which is obviously not an "entity other than" the debtor in possession. The basic objective of Section 365(c)(1)—to protect the contract counterparty from unlawful assignment of the con-

tract—simply is not implicated when a debtor in possession itself seeks to assume, but not assign, the contract.[4]

This conclusion comports with the "plain meaning" of all of the words employed in Section 365(c)(1) and gives full effect to that section and to the provisions and objectives of Chapter 11, which are designed to foster, not frustrate, the reorganization and the economic well-being of debtors in possession. And it avoids the perverse and anomalous consequence of the "hypothetical test" rule under which a debtor may lose the benefit of a non-assignable contract vital to its economic future solely because it filed for bankruptcy.

Finally, there is legislative history supporting the proposition that Congress did not intend Section 365(c)(1) to preclude the debtor in possession from assuming its non-assignable contracts. The language of Section 365(c)(1)(A), as originally passed in 1978, read:

> (c) The trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—,
>
> > (1) (A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance *to the trustee or an assignee of such contract or lease*, whether or not such contract or lease prohibits or restricts

assignment of rights or delegation of duties . . . .

Pub.L. No. 95–598 (1978) (emphasis supplied). In 1980, there was a proposed bill to amend the Bankruptcy Code, the Bankruptcy Technical Correction Act of 1980. H.R. REP. No. 1195, 96th Cong., 2d Sess. (1980). The Committee on the Judiciary published a report explaining the reasoning for the suggested changes but concluding that "it is also premature to change a statute that has been in effect for such a short period of time where it is not really known to what extent these concerns are other than transitory." *Id.* That report included a proposed amendment to Section 365(c)(1)(A) that would *inter alia* replace "the trustee" with "an entity other than the debtor or the debtor in possession." *Id.* The report explained:

> This amendment makes it clear that the prohibition against a trustee's power to assume an executory contract does not apply where it is the debtor that is in possession and the performance to be given or received under a personal service contract will be the same as if no petition had been filed because of the personal nature of the contract.

*Id.* § 27(b).

Congress did not pass an amendment modifying Section 365 until 1984. Pub.L. No. 98–353 (1984). By that amendment Congress adopted the change in language quoted above exactly as proposed in 1980 and replaced "the trustee" with "an entity other than the debtor or the debtor in possession."[5]

---

4. The Supreme Court has laid to rest the notion that a debtor in possession should be deemed a different entity than the prepetition debtor. *N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (holding that "it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its con-

tracts and property in a manner it could not have employed absent the bankruptcy filing").

5. The language of Section 365(c)(1)(A) as it reads today resulted from a second amendment in 1986. PUB. L. No. 99–554 (1986). That amendment merely struck the superfluous language "or an assignee of such contract or lease" from Section 365(c)(1)(A) and, as such, has no bearing on the current issue.

Although legislative history alone may not be the touchstone for statutory interpretation, in this Court's view there is no sound reason to ignore this 1980 Judiciary Committee Report. The Report clearly addressed the very amendment adopted in 1984 and just as clearly expressed that Committee's view as to the inapplicability of Section 365(c)(1) to a debtor in possession's assumption. *Cf. In re Sunterra Corp.*, 361 F.3d at 269–70.

In any event, this legislative history does no more than confirm the conclusion which is compelled by both the plain meaning of the statute as it is written and its logic and purpose. Section 365(c)(1) limits the trustee's power to assume or assign by confirming rights under applicable law of a contract counterparty. Applying this limitation to the trustee, the trustee cannot either assume or assign because in either case the counterparty would be forced to accept performance by "an entity other than the debtor or the debtor in possession." Likewise, applying the limitation to the debtor, a debtor in possession cannot assign because the counterparty would be in the same position. However, also applying the limitation of applicable law to the debtor, the debtor in possession *can* assume because by the limitation's express terms it can have no consequence or effect as to a debtor in possession, which is *not* "an entity other than" itself.

### Conclusion

For the reasons stated above, Kmart's objection to assumption based on Section 365(c)(1) as a matter of law is overruled. Further proceedings will be scheduled promptly to resolve factual issues relating to the debtors' alleged breaches of contract and issues arising under Section 365(b)(1) relating to cure amounts and adequate assurance of future performance. Kmart's

cross-motion for relief from the automatic stay will be considered in the context of these further proceedings.

### SUPPLEMENT TO FEBRUARY 16, 2005 DECISION ON MOTION TO ASSUME EXECUTORY CONTRACTS

Kmart Corporation ("Kmart") has moved for reargument of this Court's decision dated February 16, 2005 (the "February 16 Decision" or "Decision") overruling Kmart's legal objection based on Section 365(c)(1) of the Bankruptcy Code to the debtors' motion to assume their executory contracts with Kmart. This constitutes a supplement to the February 16 Decision and will address only the concerns raised by Kmart in its motion for reargument.

Kmart argues that the February 16 Decision "overlooks and contradicts *In re Century Brass Products, Inc.*, 22 F.3d 37 (2d Cir.1994)" (hereafter "*Century Brass*"). The February 16 Decision did not cite *Century Brass*,[6] but it certainly did not overlook or contradict the proposition for which that case stands. The February 16 Decision did cite two Second Circuit opinions and eleven more decisions by other circuit courts and lower courts for the proposition, as stated in the February 16 Decision, that "[c]onsistent with the prefatory clause in Section 1107(a), many decisions have held that various statutory limitations on the powers of a Chapter 11 trustee apply to debtors in possession." This is precisely the substance of the Court of Appeals' holding in *Century Brass*. It is a holding with which this Court expressly agreed in the February 16 Decision, stating:

> There is no doubt that the prefatory clause in Section 1107 applies to the

---

**6.** Neither did Kmart in its briefing on the

motion.

limitation on assumption and assignment prescribed in Section 365(c)(1).

Kmart entirely misstates this Court's holding and analysis in the February 16 Decision when it asserts:

> The Decision held that because section 365(c)(1) of the Bankruptcy Code provides that "[t]he trustee" may not assume non-assignable executory contracts, it does not prevent a "debtor in possession" from assuming such contracts.

That is not at all what this Court held, and the rationale for the Decision was not "because section 365(c)(1) provides that 'the trustee' [as opposed to the debtor] may not assume non-assignable executory contracts." The rationale for the Decision is that the substantive limitation in Section 365(c)(1) by its terms becomes operative only "*if*" the non-debtor is excused by applicable law from further contractual relations with an entity "*other than*" the debtor, and assumption by a debtor without assignment does not involve an entity other than the debtor. Applicable law does not excuse a non-debtor from performance with a debtor who assumes but does not assign.

The fundamental defect in Kmart's theory of the case (and that of the three circuit courts that have adopted the "hypothetical test") is that it focuses solely on the introductory language of Section 365(c) "the trustee may not assume or assign," and ignores the fact that the prohibition applies only "**if**" the substantive limitation in subsection (1)(A) excuses performance by the non-debtor. As shown in *Century Brass*, analysis is required to determine whether, and how, the substantive limitation on the trustee may be applied through Section 1107(a) to a debtor in possession when there is no trustee.

The February 16 Decision analysis begins with the proposition that, both as a matter of fact and statutory law under the Bankruptcy Code, the "trustee" and the "debtor in possession" are not synonymous. Giving recognition to this unarguable fact and the plain meaning of the statutory provision, Section 365(c)(1) on its face does not apply to a debtor in possession. It is only through the prefatory clause in Section 1107(a) that the limitations in Section 365(c) and other sections become applicable to a *debtor in possession*. The point was aptly expressed in *In re Wingspread Corporation*, 186 B.R. 803, 805 (S.D.N.Y.1995) where the District Court said that "*Century Brass* is better read as primarily interpreting § 1107(a), and only through it § 546(a)(1)," and that a statutory limitation on the power of a trustee is applicable to a debtor in possession only "through the lens of § 1107."

The February 16 Decision proceeds to analysis of Section 1107(a) and concludes that the prefatory clause in Section 1107(a) does apply to the limitation on assumption and assignment prescribed in Section 365(c)(1), consistent with the holding of the Court of Appeals for the Second Circuit in *Century Brass*, as well as the two other decisions of the Second Circuit and the eleven additional cases which were cited in the Decision.

But that conclusion does not end the analysis. The February 16 Decision goes on to state: "The question presented is whether the limitation in Section 365(c)(1) *as applied to the debtor in possession* prohibits assumption without assignment."

As the Decision then elucidates, the limitation prescribed in Section 365(c)(1) exists only "if" a counter party to a contract is excused by applicable law from accepting performance from or rendering performance to "an entity *other than* the debtor or the debtor in possession." Thus, through Section 1107(a), Section 365(c)(1) does in-

deed apply so as to bar a debtor in possession from assuming in order to assign its contract to another entity. But this limitation cannot by its express terms be construed to bar the right of a debtor in possession to assume without assignment, since without assignment there is no "entity other than the debtor in possession" involved with the contract. To hold otherwise would conflict with both the plain meaning and the intent of the statute as written by Congress.

This Court's analysis is entirely consistent with that of the Second Circuit in *Century Brass*. The question in that case was whether the two-year limitation in Section 546(a)(1) on the power to commence avoidance actions under Chapter 5 applied to debtors in possession. The limitation period, as the statute then read,[7] was "two years after the appointment of a trustee." The debtor in possession in *Century Brass* argued, based on the "plain meaning" of the statute as then written, that the limitation could not apply because a debtor in possession is not appointed and therefore could not be subject to the limitation which ran from the time of "appointment." The Court of Appeals concluded that by reason of Section 1107(a) the two-year limitation applied to the debtor in possession and began to run when the debtor filed its petition.

Quoting the reference in *Century Brass* to legislative history indicating that Section 1107(a) "places a debtor in possession in the shoes of a trustee *in every way*" and that Section 1107 is "all encompassing," Kmart asserts that any limitation on a trustee must apply to a debtor in possession. That indeed is what Section 1107(a) states ("[s]ubject to any limitations on a

trustee"), and both the Circuit Court in *Century Brass* and this Court in the February 16 Decision held that a debtor in possession is subject to all substantive limitations on a trustee. But the Court of Appeals in *Century Brass* also recognized, as did Congress in the Bankruptcy Code, that a trustee is not the same as a debtor in possession in point of fact and law, and consequently that particular statutory provisions will apply differently to each. Hence, the Court of Appeals held that the two-year limitation for a debtor in possession commenced upon the order for relief, as opposed to the statutory commencement of the appointment date for a trustee. In rejecting a literalist approach to Section 546(a)(1), the Second Circuit focused on the *substantive* limitation set forth in the statute *as applied to the debtor in possession* and recognized that the result may vary from the literal language of the statute because the statute was written in the perspective of the trustee. "*Century Brass* does not foreclose a literal interpretation of § 546 where it is directly applicable; it only requires a non-literal interpretation where § 546 is applicable through the lens of § 1107." *In re Wingspread Corporation*, 186 B.R. at 805.

The February 16 Decision follows *Century Brass* in focusing on the substantive limitation in Section 365(c)(1). But in this case no deviation from the literal language of subsection (c)(1) is required to implement the intent of Congress and the plain meaning of the statute. The statute bars assumption or assignment but only "if" the non-debtor would be excused from continuing performance with an entity "other than the debtor or debtor in possession." The Decision applies the language of the sub-

---

**7.** Section 546(a)(1) has since been amended to provide that the limitation period is two years after the later of the entry of the order for relief or one year after the appointment or election of a trustee if such appointment or election occurs before expiration of the two-year period.

stantive limitation to a debtor in possession and concludes that this particular limitation on the trustee's power to "assume or assign" does not bar a debtor in possession who assumes but does not assign its contract, since a trustee is an "entity other than" the debtor, but the debtor in possession is not. Nothing in logic, legislative history, the Bankruptcy Code, *Century Brass* or any other decision of the Second Circuit compels or countenances the use of a fiction (that a debtor in possession is "an entity other than the debtor or the debtor in possession") in applying Section 365(c)(1) to a debtor in possession which assumes but does not assign its contract.

Accordingly, upon reargument the Court adheres to its prior Decision.